ROSARIO CASTORINA, Respondent, *v.* MAX ROSEN et al., Doing Business as ROSE STREET GARAGE, Appellants, et al., Defendants.

Submitted April 14, 1943; decided May 27, 1943.

*Louis A. Breslerman* for appellants.

*Karl C. Brett* and *Milton C. Jacobs* for respondent. 

DESMOND, J. The complaint asserts that plaintiff left his automobile in storage with appellants, who are co-proprietors of a garage in New York City, on their undertaking that they would safely and securely keep the car and return it to plaintiff on demand. The further allegation of the complaint is that appellants did not take proper care of the car but returned it in a damaged or destroyed condition, to plaintiff's loss.

The proof shows that plaintiff, who had been housing his car at appellants' garage for more than a year, left it there, according to his custom, on May 4, 1939. When he called for it on May 7th, it was not to be found. The next day he saw it at a police station. It was badly damaged. As a result of disclosures made to plaintiff by the police, plaintiff made a complaint in a Magistrate's Court against defendant Birgis, an employee of appellants, accusing Birgis of a theft of the automobile.

There was testimony that Birgis had come into appellants' employ " well-recommended," about a year before the incident involving plaintiff's car. Birgis worked alone at the garage every night. His duties included washing cars and keeping watch and he had no authority to remove any car from the garage. On the morning that plaintiff's car was missing from the garage, Birgis was missing, too. Later he admitted in plaintiff's presence that he had driven plaintiff's car away from the garage without permission and had damaged it. The testimony

that Birgis was "well-recommended" at the time appellants hired him is the only thing in the record bearing in any way on the question of the exercise of due care by appellants themselves (as distinguished from the admitted fault of Birgis). Testimony as to appellants' dealings with Birgis *after* the theft does not bear on this question.

The Appellate Division was of the opinion "that sound principles of law and considerations of expediency combine to require that the bailee be held liable." (265 App. Div. 315, 318). We think the settled law in this State is to the contrary. *Schmidt* v. *Blood* (9 Wend. 268), decided in 1832, stated the rule, ever since followed, that a bailee for hire "is only bound to take the same care of the goods as of his own, and if they be stolen or embezzled by his servant, without gross negligence on his part, he is not liable * * *." (p. 271) "If he [the bailor] proves the demand upon the warehouseman and his refusal to deliver, these facts unexplained are treated by the courts as *prima facie* evidence of negligence; but if, either in the course of his proof or that of the defendant, it appears that the goods have been lost by theft, the evidence must show that the loss arose from the negligence of the warehouseman." (*Claflin* v. *Meyer,* 75 N. Y. 260, 264.) Cases involving common carriers, and cases where there is an entirely unexplained failure to return the bailed goods, are not in point. There is in the record before us no evidence at all of appellants' negligence and no basis for any finding to that effect; indeed, the Appellate Division did not say there was.

It may be, as the Appellate Division says, "not unreasonable" that the garageman, and not his customer, should stand such a loss as this. Many cases in other states, it seems, so place the burden. But the law in this State has been otherwise for a long time, and not without reason. We limit a master's liability for his servant's torts to those tortious acts done by the servant while acting within the scope of his employment. When Birgis took the car from the garage, he strayed outside that scope. So far as the record shows, he had never done any such thing before nor had there been any ground for suspicion that he was so inclined. "Where there is no notice that an employee is in the habit of acting in a manner dangerous to others, there is no duty to control the actions of the employee

outside the scope of his employment. Such limitations, at least, are dictated by fundamental principles of tort liability. Without them there would be no room for the doctrine that a person is responsible only for the result of his own fault or the fault of his servants, acting within the scope of their employment." (*Ford* v. *Grand Union Co.,* 268 N. Y. 243, 249.)

The Legislature, dealing in article 9 of the General Business Law with the rights and duties of warehousemen, has shown no inclination to change the traditional rules as to warehousemen's liabilities (see §§ 95, 107). The courts should be slow to change such rules.

The judgments should be reversed and a new trial granted with costs to the appellants to abide the event.

LOUGHRAN, RIPPEY, LEWIS and CONWAY, JJ., concur; LEHMAN, Ch. J., and FINCH, J., taking no part.

Judgments reversed, etc.