HELEN CHARNOV, Plaintiff, *v.* CITY OF NEW YORK, Defendant.

Municipal Court of the City of New York, Borough of Brooklyn, February 16, 1948.

*Martin Rosen* and *Louis R. Patur* for plaintiff.

*John P. McGrath, Corporation Counsel (Aloysius W. Glennon* of counsel), for defendant.

BAKER, J. On June 27, 1945, and for three years prior thereto, plaintiff occupied several stalls in an enclosed public market

known as Havemeyer Street Market, owned by the City of New York and operated by the department of markets of said city. She was in possession under a permit issued by the commissioner of public markets which provided for a rental of $23.50 weekly and provided further as follows: "This permit is issued subject to an agreement that the holder will comply with all the Rules and Regulations of the Commissioner of Public Markets and of all City Departments and upon condition that the permittee is not to be considered a tenant or entitled to the benefit of the statute relating to summary proceedings, anything hereinabove to the contrary notwithstanding."

Under the terms of the permit, the stalls were to be used by plaintiff for the retail sale of dairy products.

Plaintiff erected at the stalls a refrigerator in which her merchandise was stored; she also kept a cash register for use in the business.

Under the rules and regulations of the authorities having supervision at the time of plaintiff's loss, the market was open to the public between the hours of 7 A.M. and 7 P.M., except on Thursdays and Saturdays, when the closing hour was 10 P.M. All persons within the market building at the closing hour were then required to leave, stall operators being permitted to remain for a short time thereafter for the purpose of cleaning up and preparing for the following day's business. At the closing hour, all entrance and exit doors were locked save one at which an employee of the city was stationed for the purpose of permitting persons to depart.

From the time the market was closed for the night until opening time the following day, no persons, except employees of the City of New York, were permitted within the market building. Neither plaintiff nor any of the other stall operators had keys to the doors, these being retained by city employees.

On June 27, 1945, the usual closing procedure was followed. Plaintiff secured her refrigerator with a chain and lock, locked the cash register, retaining the keys, and left the market at about 7:30 P.M. All entrances and exits were then locked by employees of the city, who thereupon proceeded with the work of cleaning up. This work was completed at about midnight at which time the city inspector in charge and his men tested all entrances and exits, ascertained that all were secure, and left the market in good order. There was no night watchman or other employee of the city on duty at the market between the hours of midnight and opening time the following day.

A police officer testified, in defendant's behalf, that at about 12:15 in the morning of June 28, 1945, he tried and tested all doors of the market building and found that all were secure. He repeated this procedure, a regular duty of his tour, hourly thereafter until about 6 A.M. and on each occasion found everything in order. At that hour, a porter employed by the city arrived at the market. He opened the doors to the public about 7 A.M. At about this time, the officer was called and informed that plaintiff's stall had been burglarized.

When plaintiff arrived at about 7:30 A.M., she saw several employees of the city, including the police officer, at or near her stall. She was informed that the stall had been broken into and the cash register damaged. Inspection disclosed that a quantity of merchandise was missing, the cash register had been smashed, and the sum of $80 removed therefrom.

Plaintiff seeks in this action to recover of defendant the loss sustained, upon the theory that the relationship between the parties was that of bailor and bailee, and that defendant has failed to adduce proof sufficient to establish that the loss was occasioned by circumstances beyond its control.

Defendant resists the claim upon the ground that the evidence established no bailment, and, if it be assumed there was one, plaintiff failed to sustain the burden of proof as to negligence.

I think there was a bailment here. Possession is the essence of the relationship. " It is the element of lawful possession, however created, and duty to account for the thing as the property of another that creates the bailment, regardless of whether such possession is based on contract in the ordinary sense or not." (*Foulka* v. *New York Consolidated R. R. Co.,* 228 N. Y. 269, 275.) The proof shows no express contract of bailment in the usual and ordinary sense; but can it fairly be said that, under the facts here disclosed, the parties contemplated that defendant was to assume no responsibility whatever in respect of the merchandise necessarily stored overnight by the permittees in connection with their business? Reasonable and common-sense appraisement of the facts compels an inference to the contrary. Defendant's rules and regulations barred all persons, including permittees, from the market during the hours it was closed. During those hours, complete and exclusive possession and control of the market building was in defendant. No permittee had the right of access to the building or the stalls, or any right to exercise dominion over the goods stored within. Thus, plaintiff's merchandise and the chattels used by her in the business were in the pos-

session and under the control of the defendant during the hours stated. That possession carried with it the duty to account and to exercise reasonable care to provide for the safety of the goods. The nature of the relationship between the parties, the rules under which plaintiff occupied her stall, the assumption by defendant of exclusive possession of the market place during closed hours, all point irresistibly to the conclusion that here there was a bailment and that the parties so intended.

Here, the evidence shows, plaintiff's goods were locked within the stall, and she retained the key. It should be noted that the market rules did not require that she take any such precaution upon departing for the night. She might lawfully have left the goods upon the counter unsecured. Defendant argues that, because plaintiff exercised a sensible precaution, it is absolved of responsibility which might otherwise have been assumed. I think that argument is at war with common sense. It might have some validity if persons other than city employees had had lawful access to the building during closing hours. Had the goods been left exposed, defendant's duty to account could not be seriously questioned. I think the duty still subsisted although the goods were under lock and key. (See *Jones* v. *Morgan,* 90 N. Y. 4.)

It remains to be determined whether defendant satisfactorily explained the loss and whether, on the whole case, plaintiff sustained the burden of proof on the issue of negligence.

The evidence shows that upon departing for the night all entrances and exits of the building were securely locked and tested by defendant's employees. Hourly throughout the night thereafter, right up until the opening of the market, a police officer tested each door of the building and ascertained that it was secure. Inspection on the morning of the burglary revealed nothing which would indicate that the locks on the doors had been tampered with or that the doors had been forced. The proof shows, nevertheless, that plaintiff's goods were stolen sometime between midnight and six o'clock in the morning of June 28th.

I do not think it can be said upon this proof that the theft was made possible by reason of defendant's lack of care or that defendant failed to exercise reasonable precaution for the safety of plaintiff's goods. Defendant was not an insurer of the safety of the goods. Its duty was to exercise reasonable care, and it was incumbent upon plaintiff, on the whole case, to show the lack of it. I think the precautions taken by

defendant here were sufficient to discharge the duty (*Castorina* v. *Rosen,* 290 N. Y. 445; *Claflin* v. *Meyer,* 75 N. Y. 260), and that plaintiff has failed to sustain the burden of proof.

Judgment will be directed for defendant dismissing the complaint.