■ CHARLES BROWN, an Infant, by His Guardian ad Litem, BENJAMIN BROWN, Appellant, v. TOWN OF BOLTON, Respondent.— In a personal injury negligence action an infant plaintiff appeals from a judgment of the Supreme Court at Trial Term dismissing the complaint at the close of his case. Defendant owned and operated a public dump for the use of its residents. One Monroe was employed as its caretaker under a fixed annual salary with the perquisite that he might retain for his own use the proceeds of the sale of such discarded materials as he considered to be salvageable. These consisting mainly of metals, furniture and certain liquids were set apart from the general mass of trash brought to the dump and stored in a small shanty located on the premises prepa-

ratory to their removal and sale. In the Spring and Summer of 1958 plaintiff, a neighborhood boy then 12 years of age, assisted Monroe in the care of the dump; for such services Monroe from time to time rewarded him with articles of clothing or paid him small sums of money; the hiring of helpers at his own expense was not forbidden by Monroe's oral contract with the town; from plaintiff's proof it might be reasonably inferred that the defendant knew of its employee's practice of engaging young boys to aid him in the performance of his duties. Plaintiff's parents opposed their son's frequentation of the dump; with the view of terminating it his mother in June, 1958 communicated with a member of the town board who was the chairman of its "dump committee", a frequent official visitor at its site and a common user of its facilities and requested him to instruct Monroe to put an end to the practice. The Town Board member testified that during the same month he told Monroe that "it was very dangerous to have the boys around there" and directed him "to keep the boys away" particularly the plaintiff; the further use of the services of plaintiff by Monroe, he stated, was in violation of his specific instruction. On the morning of July 14, 1958 plaintiff worked at the dump under the direction of the town employee; at lunchtime both left it, in the latter's truck. Plaintiff testified that before reaching his home Monroe requested him to return to the dump in the afternoon "to take care of it until he got back there"; soon after his return plaintiff came across a can containing a mixture of gasoline and turpentine which he took to the shanty; in placing the container on a shelf some of its contents spilled over his pants; later while pushing "boxes and things" into a continuously burning fire in accordance with the incineration procedure in vogue at the dump his clothing at the point of the spillage was set ablaze causing severe burns for which he sought a recovery. Trial Term did not state the grounds for its action. In supporting the dismissal respondent urges that the status of the infant plaintiff upon the dump on the day of his injury was that of a trespasser or a bare licensee to whom the defendant town owed only the duty to refrain from inflicting an intentional, wanton or willful injury and that he was guilty of contributory negligence as a matter of law. The evidence presented issues of fact as to whether the caretaker was guilty of negligence by inviting and inducing the infant plaintiff to undertake without proper supervision the performance of work which a jury could properly find to have been fraught with danger (*Simon* v. *Ora Realty Corp.*, 1 N Y 2d 388; *Ferro* v. *Sinsheimer Estate*, 256 N. Y. 398) and whether, if tortious, the conduct of the town employee although disobedient to an express order of his master was within the scope of the employment under well-settled principles governing vicarious liability which rest essentially upon the doctrine of *respondeat superior*. (*Cosgrove* v. *Ogden*, 49 N. Y. 255; *Jones* v. *Weigand*, 134 App. Div. 644, 645; *Wood* v. *Saunders*, 228 App. Div. 69; *Brown* v. *Great Atlantic & Pacific Tea Co.*, 275 App. Div. 304; *Bluestein* v. *Scoparino*, 277 App. Div. 534; Restatement 2d, Agency, § 230; Prosser, Torts [2d ed.], § 63, p. 351.) The infant plaintiff cannot be held to the exercise of the same discretion and judgment in entering upon the service as would be required of an adult. The triers of the facts should have been permitted to determine whether under the circumstances disclosed by the record he appreciated the danger of injury to which the work exposed him and assumed its risks or whether he was chargeable with contributory negligence in the manner of its performance. Since a prima facie case was established, the non-suit was improperly granted. Judgment reversed, on the law and the facts, and a new trial granted, with costs to abide the event. Bergan, P. J., Coon, Gibson and Taylor, JJ., concur; Reynolds, J., dissents, and votes to affirm. Reynolds, J., dissenting: The general rule in New York on this subject is expressed in *Castorina* v. *Rosen* (290 N. Y. 445, 447 [DESMOND, J.]): "We limit a master's

liability for his servant's torts to those tortious acts done by the servant while acting within the scope of his employment." While it is true that the fact that the actions of an employee in direct disobedience to the master's instructions under certain circumstances may not preclude liability of the master for such actions, it is axiomatic that such actions must nevertheless be performed within the scope of employment (see, e.g., *New York Cent. R. R. Co.* v. *United States,* 212 U. S. 481, 493). I can see no basis in the present record on which a jury could find that the caretaker's action in utilizing plaintiff's services was for the benefit of or to advance the purposes of the town. Rather it is apparent that plaintiff's activities were secured to assist the caretaker with the salvage operations he carried out for his own profit. Any attempt to find a benefit to the town because the salvage activities helped keep the dump in a state of repair or because the caretaker's salvage rights were part of his compensation is too tenuous to accept. It seems inescapable that the activities for which plaintiff's services were here secured were outside of the caretaker's employment and to effect a purpose of his own. Nor can I find any evidence which would indicate improper supervision on the part of the town to see that its order for the caretaker to dispense with plaintiff's services was not carried out. The duty of the employer under these circumstances is to exercise reasonable care. Here by the interdiction they have done so. It was not necessary to station another employee at this remote place to see that their order was obeyed.