07-5771-cv
Air Transport Ass'n of America v. Cuomo

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2007

(Argued: March 5, 2008                           Decided: March 25, 2008)

Docket No. 07-5771-cv

_____

AIR TRANSPORT ASSOCIATION OF AMERICA, INC.,
*Plaintiff-Appellant,*

-v.-

ANDREW CUOMO, in his official capacity as Attorney General
of the State of New York, MINDY A. BOCKSTEIN, in her
official capacity as Chairperson and Executive Director
of the New York State Consumer Protection Board,
*Defendants-Appellees.*

_____

Before:     WESLEY, LIVINGSTON, *Circuit Judges,* and
            COGAN, *District Judge.*[*]

The Air Transport Association of America appeals from a final judgment

of the United States District Court for the Northern District of New York (Kahn,

J.) granting summary judgment to defendants and dismissing plaintiff's com-

plaint seeking declaratory and injunctive relief against New York State's

Passenger Bill of Rights, codified at section 553(2)(b)-(d) of the New York

---

[*] The Honorable Brian M. Cogan, District Judge, United States District Court for the
Eastern District of New York, sitting by designation.

Executive Law and sections 251-f to 251-j of the New York General Business Law. We reverse and hold that the substantive provisions of the law, N.Y. Gen. Bus. Law § 251-g(1), are preempted by the Airline Deregulation Act of 1978.

Reversed and remanded.

SETH P. WAXMAN, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC (Bruce H. Rabinowitz, Jonathan E. Nuechterlein, Heather Zachary, Daniel S. Volchok, Chad Golder, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, Robert S. Span, John J. Gallagher, Neal D. Mollen, Paul, Hastings, Janofsky & Walker LLP, Washington, DC, *on the brief*), *for Plaintiff-Appellant*.

BARBARA D. UNDERWOOD, Solicitor General (Andrea Oser, Deputy Solicitor General, Andrew B. Ayers, Assistant Solicitor General, *of counsel*, Andrew M. Cuomo, Attorney General of the State of New York, *on the brief*), *for Defendants-Appellees*.

Paul S. Hudson, Sarasota, FL (Burton Jay Rubin, Alexandria, VA, *on the brief*), *for Amici Curiae Aviation Consumer Action Project* and *Coalition for an Airline Passengers' Bill of Rights in Support of Defendants-Appellees*.

PER CURIAM:

Appellant Air Transport Association of America ("Air Transport"), the principal trade and service organization of the United States airline industry, appeals from an order of the United States District Court for the Northern

District of New York (Kahn, J.) granting summary judgment to Appellees and dismissing its complaint seeking declaratory and injunctive relief against enforcement of the New York State Passenger Bill of Rights (the "PBR"), 2007 N.Y. Sess. Laws, ch. 472 (codified at N.Y. Exec. Law § 553(2)(b)-(d); N.Y. Gen. Bus. Law §§ 251-f to 251-j). *Air Transp. Ass'n of Am. v. Cuomo*, 528 F. Supp. 2d 62 (N.D.N.Y. 2007). We hold that the PBR is preempted by the express preemption provision of the Airline Deregulation Act of 1978 (the "ADA") and therefore reverse.

**BACKGROUND**

Following a series of well-publicized incidents during the winter of 2006-2007 in which airline passengers endured lengthy delays grounded on New York runways, some without being provided water or food, the New York legislature enacted the PBR. The substantive provisions of the PBR state as follows:

> 1. Whenever airline passengers have boarded an aircraft and are delayed more than three hours on the aircraft prior to takeoff, the carrier shall ensure that passengers are provided as needed with:
>
> (a) electric generation service to provide temporary power for fresh air and lights;
>
> (b) waste removal service in order to service the holding tanks for on-board restrooms; and
>
> (c) adequate food and drinking water and other refreshments.

3

N.Y. Gen. Bus. Law § 251-g(1).  The law also requires all carriers to display consumer complaint contact information and an explanation of these rights.  *Id.* § 251-g(2).  Section 251-g took effect on January 1, 2008.  2007 N.Y. Sess. Laws, ch. 472, § 5.

Air Transport filed suit in the United States District Court for the Northern District of New York seeking declaratory and injunctive relief on the grounds that the PBR is preempted by the ADA and violates the Commerce Clause of the U.S. Constitution.  Appellant Air Transport moved for summary judgment, and the district court granted summary judgment *sua sponte* to the appellees, holding that the PBR was not expressly preempted by the ADA because it is not "related to a price, route, or service of an air carrier," *Air Transp.*, 528 F. Supp. 2d at 66-67 (quoting 49 U.S.C. § 41713(b)(1)) (internal quotation mark omitted), and was not impliedly preempted because Congress did not intend for the ADA to occupy the field of airplane safety, *id.* at 67-68.  We granted Air Transport's motion for an expedited appeal.

## DISCUSSION

We review the district court's grant of summary judgment de novo.  *SEC v. Kern*, 425 F.3d 143, 147 (2d Cir. 2005); *see also Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48, 56 (2d Cir. 2006) ("[A] determination regarding preemp-

tion is a conclusion of law, and we therefore review it de novo.").

The Supremacy Clause, U.S. Const. art VI, cl. 2, "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824)). Preemption can be either express or implied. Express preemption arises when "a federal statute expressly directs that state law be ousted." *Ass'n of Int'l Auto. Mfrs. v. Abrams*, 84 F.3d 602, 607 (2d Cir. 1996). Implied preemption arises when, "in the absence of explicit statutory language, . . . Congress intended the Federal Government to occupy [a field] exclusively," or when state law "actually conflicts with federal law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). More specifically, preemption is implied when "the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where 'the object sought to be obtained by the federal law and the character of obligations imposed by it . . . reveal the same purpose.'" *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988) (omission in original) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Congress has enacted two statutes that potentially bear on the subject matter of the PBR: (1) the ADA, Pub. L. No. 95-504, 92 Stat. 1705 (1978); and (2) the Federal Aviation Act of 1958 (the "FAA"), Pub. L. No. 85-726, 72 Stat. 731. We begin with the former.

5

## I.

"Since the existence of preemption turns on Congress's intent, we are to 'begin as we do in any exercise of statutory construction[,] with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs.'" *McNally v. Port Auth. of N.Y. & N.J. (In re WTC Disaster Site)*, 414 F.3d 352, 371 (2d Cir. 2005) (alteration in original) (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). The ADA's express preemption provision states as follows:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1). The exceptions to which this provision refers are not applicable in this case. Thus, the PBR is preempted if it is "related to a price, route, or service of an air carrier." We conclude that it is.

## A.

Air Transport's complaint asserts a claim under the Supremacy Clause and a claim that the PBR violates § 41713(b)(1). Importantly, § 41713(b)(1) does

6

not provide an express private right of action, and we have held with regard to its predecessor statute, which is substantively identical, that no private right of action can be implied. *W. Air Lines, Inc. v. Port Auth. of N.Y. & N.J.*, 817 F.2d 222, 225 (2d Cir. 1987); *Montauk-Caribbean Airways, Inc. v. Hope*, 784 F.2d 91, 97 (2d Cir. 1986). Air Transport therefore cannot sue for a violation of the statute.

Nevertheless, Air Transport is entitled to pursue its preemption challenge through its Supremacy Clause claim. The distinction between a statutory claim and a Supremacy Clause claim, although seemingly without a difference in this particular context, is important and is not a trifling formalism:

> A claim under the Supremacy Clause that a federal law preempts a state regulation is distinct from a claim for enforcement of that federal law. . . . A claim under the Supremacy Clause simply asserts that a federal statute has taken away local authority to regulate a certain activity. In contrast, an implied private right of action is a means of enforcing the substantive provisions of a federal law. It provides remedies, frequently including damages, for violations of federal law by a government entity or by a private party. The mere coincidence that the federal law in question in this case contains its own preemption language does not affect this distinction.

*W. Air Lines*, 817 F.2d at 225-26. Moreover, contrary to amici's suggestion, Air Transport's preenforcement challenge presents no problem of unripeness or other barriers to justiciability. *See Morales v. Trans World Airlines, Inc.*, 504

7

U.S. 374, 380-81 (1992) (citing *Ex parte Young*, 209 U.S. 123, 145-47, 163-65 (1908)).

**B.**

Congress enacted the ADA in 1978, loosening its economic regulation of the airline industry after determining that "'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality . . . of air transportation.'" *Id.* at 378 (alteration and omission in original) (quoting 49 U.S.C. app. § 1302(a)(4), (9) (1988)). "To ensure that the States would not undo [this] deregulation with regulation of their own," Congress included an express preemption provision. *Id.; see also id.* at 389-91 (holding that the ADA expressly preempted the application of state deceptive business practice laws to airline fare advertisements because such regulation related to air carrier prices). Recognizing this goal, the Supreme Court has repeatedly emphasized the breadth of the ADA's preemption provision. *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 225-26 (1995); *id.* at 235 (Stevens, J., concurring in part and dissenting in part); *Morales*, 504 U.S. at 383-84; *see also Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. ---, 128 S. Ct. 989, 998 (2008) (Ginsburg, J., concurring) (noting the "breadth of [the] preemption language" in the Federal Aviation Administration Authorization Act of 1994, whose

preemption provision, 49 U.S.C. § 14501(c)(1), is in pari materia with that of the ADA).

Although this Court has not yet defined "service" as it is used in the ADA, we have little difficulty concluding that requiring airlines to provide food, water, electricity, and restrooms to passengers during lengthy ground delays relates to the service of an air carrier. This conclusion draws considerable support from the Supreme Court's recent unanimous opinion in *Rowe* construing 49 U.S.C. § 14501(c)(1)'s identically worded preemption provision. In *Rowe*, the Court addressed a Maine law imposing, among other obligations, a requirement that retailers shipping tobacco products to customers within the State use a delivery service that provides certain forms of recipient verification — a law enacted, according to the State, to further its interest in preventing minors from obtaining cigarettes. The *Rowe* Court reiterated its conclusions from *Morales* in construing the ADA:

> (1) that "[s]tate enforcement actions having a connection with, or reference to" carrier "'rates, routes, or services' are pre-empted"; (2) that such pre-emption may occur even if a state law's effect on rates, routes or services "is only indirect"; (3) that, in respect to pre-emption, it makes no difference whether a state law is "consistent" or "inconsistent" with federal regulation; and (4) that pre-emption occurs at least where state laws have a "significant impact" related to Congress' deregulatory and pre-emption-related objectives.

128 S. Ct. at 995 (alteration in original) (emphasis omitted) (citations omitted)

(quoting *Morales*, 504 U.S. at 384, 386-87, 390). The Court emphasized that Congress's "overarching goal" with regard to the ADA was helping to assure that transportation rates, routes, and services "reflect[ed] 'maximum reliance on competitive market forces,' thereby stimulating" not only "'efficiency, innovation, and low prices,'" but also "'variety' and 'quality'" in transportation services. *Id.* (quoting *Morales*, 504 U.S. at 378).

A majority of the circuits to have construed "service" have held that the term refers to the provision or anticipated provision of labor from the airline to its passengers and encompasses matters such as boarding procedures, baggage handling, and food and drink — matters incidental to and distinct from the actual transportation of passengers. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336-38 (5th Cir. 1995) (en banc); *see also Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1257 (11th Cir. 2003) (referring to the *Hodges* definition as the "more compelling" of the alternative definitions that have been adopted); *Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998) (citing *Travel All Over the World* and *Hodges* in holding that tort claims "based in part upon [an airline's] refusal of permission to board" are preempted because "boarding procedures are a service rendered by an airline"); *Chukwu v. Bd. of Dirs. British Airways*, 889 F. Supp. 12, 13 (D. Mass. 1995) (adopting the *Hodges*

10

definition), *aff'd mem. sub nom. Azubuko v. Bd. of Dirs. British Airways*, 101 F.3d 106 (1st Cir. 1996). The Third and Ninth Circuits, in contrast, have construed service to refer more narrowly to "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail," but not to "include an airline's provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities." *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir. 1998) (en banc); *accord Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 193-94 (3d Cir. 1998).

*Charas*'s approach, we believe, is inconsistent with the Supreme Court's recent decision in *Rowe.* There, the Court necessarily defined "service" to extend beyond prices, schedules, origins, and destinations. Indeed, in determining that the ADA's preemption provision reached, among other things, the imposition of recipient verification requirements on tobacco shipments, the Court stated expressly that "federal law must . . . pre-empt Maine's efforts directly to regulate carrier *services.*" *Rowe*, 128 S. Ct. at 998 (emphasis added). It noted further that to interpret the federal preemption provision not to reach such regulation "could easily lead to a patchwork of state service-determining laws, rules, and regulations," which would be "inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive

11

marketplace." *Id.* at 996.

We hold that requiring airlines to provide food, water, electricity, and restrooms to passengers during lengthy ground delays does relate to the service of an air carrier and therefore falls within the express terms of the ADA's preemption provision. As a result, the substantive provisions of the PBR, codified at section 251-g(1) of the New York General Business Law, are preempted.

The unanimous *Rowe* opinion held that Maine's law resulted in Maine's "direct substitution of its own governmental commands for 'competitive market forces'" in determining "the services that motor carriers will provide" to their customers. *Id.* at 995 (quoting *Morales*, 504 U.S. at 378). In this respect, the PBR is indistinguishable. It substitutes New York's commands for competitive market forces, requiring airlines to provide the services that New York specifies during lengthy ground delays and threatening the same "patchwork of state service-determining laws, rules, and regulations" that concerned the Court in *Rowe*.[1] *Id.* at 996.

---

[1] At least nine other states have proposed legislation regarding lengthy ground delays. *See* H.R. 2149, 48th Leg., 2d Reg. Sess. (Ariz. 2008); Assem. 1943, 2007-2008 Reg. Sess. (Cal. 2008); S. 2062, 110th Reg. Sess. (Fla. 2008); S. 161, 115th Gen. Assem., 2d Reg. Sess. (Ind. 2008); H.R. 5475, 94th Legis., 2007 Reg. Sess. (Mich. 2007); Assem. 967, 213th Leg., 1st Ann. Sess. (N.J. 2008); H.R. 2055, 190th Gen. Assem., 2007 Sess. (Pa. 2007); S. 2088, 2008 Legis. Sess. (R.I. 2008); S. 6269, 60th Legis., 2008 Reg. Sess. (Wash. 2008). These proposed laws would impose obligations ranging from a requirement that the airline accommodate passengers on the next available route, *see* Mich. H.R. 5475 § 5(2), to a requirement that

12

Additionally, we note that *Rowe* declined to read into § 14501(c)(1)'s preemption provision an exception that preserves state laws protecting the public health. *Id.* at 996-97. *Rowe* accordingly forecloses New York's argument and the district court's conclusion, *see Air Transp.*, 528 F. Supp. 2d at 67, that classifying the PBR as a health and safety regulation or a matter of basic human necessities somehow shields it from the preemptive force of § 41713(b)(1). Onboard amenities, regardless of whether they are luxuries or necessities, still relate to airline service and fall within the express terms of the preemption provision — a conclusion, we note, that even the drafters of the PBR appear to have been unable to escape. *See* N.Y. Gen. Bus. Law § 251-g(1)(a) (referring to "electric generation service "); *id.* § 251-g(1)(b) (referring to "waste removal service ").

## II.

Insofar as the PBR is intended to prescribe standards of airline safety, we

passengers be permitted to disembark, *see* Pa. H.R. 2055 § 3(b). It is irrelevant that these bills all seek to impose the same principal service obligations as the PBR — requiring airlines to provide food, water, electric generation, and waste removal after a three-hour ground delay — for state laws related to airline service are preempted regardless of whether they are consistent with each other and regardless of whether they are consistent with the ADA's objective. *Rowe*, 128 S. Ct. at 995; *Morales*, 504 U.S. at 386-87. We note that the Department of Transportation has proposed and sought comment on several similar passenger protection measures that could provide uniform standards to deal with lengthy ground delays. *See* Enhancing Airline Passenger Protections, 72 Fed. Reg. 65,233 (Nov. 20, 2007) (to be codified at 14 C.F.R. pts. 234, 253, 259, 399).

note, finally, that it may also be impliedly preempted by the FAA and regulations promulgated thereunder. The FAA was enacted to create a "uniform and exclusive system of federal regulation" in the field of air safety. *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 639 (1973). Shortly after it became law, we noted that the FAA "was passed by Congress for the purpose of centralizing in a single authority — indeed, in one administrator — the power to frame rules for the safe and efficient use of the nation's airspace." *Air Line Pilots Ass'n, Int'l v. Quesada*, 276 F.2d 892, 894 (2d Cir. 1960); *see also British Airways Bd. v. Port Auth. of N.Y. & N.J.*, 558 F.2d 75, 83 (2d Cir. 1977) ("[The FAA] requires that exclusive control of airspace management be concentrated at the national level."). Congress and the Federal Aviation Administration have used this authority to enact rules addressing virtually all areas of air safety. These regulations range from a general standard of care for operating requirements, *see* 14 C.F.R. § 91.13(a) ("No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."), to the details of the contents of mandatory onboard first-aid kits, *id*. pt. 121, app. A, to the maximum concentration of carbon monoxide permitted in "suitably vented" compartments, *id*. § 125.117. This power extends to grounded planes and airport runways. *See id*. § 91.123 (requiring pilots to comply with all orders and instructions of air traffic control); *id*. § 139.329 (requiring airlines to restrict

14

movement of pedestrians and ground vehicles on runways).

The intent to centralize air safety authority and the comprehensiveness of these regulations pursuant to that authority have led several other circuits (and several courts within this Circuit) to conclude that Congress intended to occupy the entire field and thereby preempt state regulation of air safety. *See, e.g.*, *Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007) ("[T]he FAA preempts the entire field of aviation safety through implied field preemption. The FAA and regulations promulgated pursuant to it establish complete and thorough safety standards for air travel, which are not subject to supplementation by . . . state laws."); *Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 795 (6th Cir. 2005), *cert. denied*, 547 U.S. 1003 (2006); *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 367-68 (3d Cir. 1999); *French v. Pan Am Express, Inc.*, 869 F.2d 1, 5 (1st Cir. 1989); *Curtin v. Port Auth. of N.Y. & N.J.*, 183 F. Supp. 2d 664, 671 (S.D.N.Y. 2002). Although we have not addressed this precise issue, we have acknowledged that the FAA does not preempt all state law tort actions. *See In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 635 F.2d 67, 75 (2d Cir. 1980). However, the FAA has a savings clause that specifically preserves these actions. *See* 49 U.S.C. § 40120(c).

If New York's view regarding the scope of its regulatory authority carried the day, another state could be free to enact a law prohibiting the service of soda

on flights departing from its airports, while another could require allergen-free food options on its outbound flights, unraveling the centralized federal framework for air travel. On this point, the decisions of the Fifth and Ninth Circuits finding preemption of state common law claims for failure to warn of the risk of deep vein thrombosis are instructive. *See Montalvo*, 508 F.3d at 473 ("[A] state [is not] free to require any announcement it wishe[s] on all planes arriving in, or departing from, its soil . . . ."); *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 383-84 (5th Cir. 2004).

In light of our determination that the PBR is preempted by the ADA, however, we need not address the scope of any FAA preemption, and we decline to do so here. Although the goals of the PBR are laudable and the circumstances motivating its enactment deplorable, only the federal government has the authority to enact such a law. We conclude, then, by reiterating our holding that the PBR's substantive provisions, codified at section 251-g(1) of the New York General Business Law, are preempted by 49 U.S.C. § 41713(b)(1).

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is RE-VERSED, and the case is REMANDED to the district court so that it may enter summary judgment in favor of Air Transport.

16