Natalie A. HEKMAT and Michael Hekmat, Plaintiffs,

v.

U.S. TRANSPORTATION SECURITY ADMINISTRATION and JetBlue Airways Corporation, Defendants.

15 Civ. 8531 (NRB)

United States District Court, S.D. New York.

Signed March 29, 2017

Kyle Christian Van De Water, Corbally, Gartland and Rappleyea, LLP, Pough-keepsie, NY, for Plaintiffs.

Steven M. Raffaele, Judith Riccardi Nemsick, Stosh Michael Silivos, Holland & Knight LLP, Rebecca Sol Tinio, U.S. Attorney's Office, New York, NY, for Defendants.

---

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD,
UNITED STATES DISTRICT JUDGE

Plaintiffs Natalie A. Hekmat and Michael Hekmat sued defendants JetBlue Airways Corporation ("JetBlue") and the United States Transportation Security Administration (the "TSA"), asserting bailment, negligence, failure to supervise, and breach of contract claims after approximately $95,000 in jewelry went missing from their checked luggage during a JetBlue flight. Defendants moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, defendants' motions are granted.

### BACKGROUND [1]

Plaintiffs flew from New York to Los Angeles on a JetBlue flight. Am. Compl ¶¶ 37–42. Plaintiffs claim that they packed approximately $95,000 of jewelry in their luggage, which they checked-in and left with a JetBlue representative in New York. Id. ¶¶ 26–41. At some point prior to take-off, the luggage was transferred to the TSA for security screening and then transferred back to JetBlue. Id. ¶¶ 53–55. When plaintiffs picked up their luggage in Los Angeles, the jewelry was missing. Id. ¶¶ 43–45.

Plaintiffs brought suit in October 2015 seeking to hold defendants liable for the missing jewelry (ECF No. 1). Plaintiffs amended the complaint on March 2, 2016 (ECF No. 26), asserting six causes of action. Count I asserts a bailment claim against both defendants. Counts II–IV assert negligence claims against both defendants, alleging that defendants failed to "institute adequate security measures to deter their employees from" theft, "warn

---

1. The following facts are taken from plaintiffs' amended complaint filed on March 2, 2016 (ECF No. 26) (the "Amended Complaint" or "Am. Compl.").

Plaintiffs that their property may be stolen or lost," "protect Plaintiffs against such theft by their agents and employees," and "protect Plaintiffs' property by not delivering it to Plaintiffs." Id. ¶¶ 71, 78, 86. Count V asserts a failure to supervise claim against both defendants. Count VI asserts a breach of contract claim against JetBlue for failing to deliver the jewelry.

Before us now are JetBlue's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) (ECF No. 34) and the TSA's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) (ECF No. 37).

## DISCUSSION

### I. Motion to Dismiss Standards

#### A. Rule 12(b)(1)

■■■ "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016) (citation omitted).

#### B. Rule 12(b)(6)

In ruling on a Rule 12(b)(6) motion to dismiss, the district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiffs' favor. Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). To survive the motion, the complaint's well-pleaded factual allegations must "plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A claim has "facial plausibility" when plaintiffs plead "factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Id. at 678, 129 S.Ct. 1937. A court, however, need not accept conclusory allegations as true. Harris, 572 F.3d at 72.

### II. JetBlue

JetBlue argues that plaintiffs' tort claims asserted against it—bailment, negligence, and failure to supervise—are preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1) (the "ADA"), and that the remaining contract claim fails because there was no breach. We agree.

#### A. ADA Preemption of Tort Claims

Under the ADA, states are prohibited from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1); Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378–79, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The Supreme Court has interpreted the ADA's preemption provision broadly, construing the phrase "related to" as referring to any state action "having a connection with, or reference to," an airline's rates, routes, or services. Morales, 504 U.S. at 384, 112 S.Ct. 2031. The Court has also found that the provision preempts state tort claims. Nw., Inc. v. Ginsberg, —— U.S. ——, 134 S.Ct. 1422, 1429, 188 L.Ed.2d 538 (2014).

District courts in this Circuit have applied a three part test to determine whether a state law claim is preempted by the ADA. Courts look to "(1) whether the activity is a service; (2) whether the claim affects the airline service directly or tenuously, remotely, or peripherally; and (3) whether the underlying tortious conduct was reasonably necessary to the provision of the service." Abdel–Karim v. EgyptAir Airlines, 116 F.Supp.3d 389, 404 (S.D.N.Y. 2015) (internal quotations marks omitted),

aff'd sub nom. Abdel–Karim v. Egyptair Holding Co., 649 Fed.Appx. 5 (2d Cir. 2016); see also Lozada v. Delta Airlines, Inc., No. 13 CIV. 7388 JPO, 2014 WL 2738529, at *3 (S.D.N.Y. June 17, 2014); Farash v. Cont'l Airlines, Inc., 574 F.Supp.2d 356, 363 (S.D.N.Y. 2008), aff'd, 337 Fed.Appx. 7 (2d Cir. 2009); Rombom v. United Air Lines, Inc., 867 F.Supp. 214, 221–22 (S.D.N.Y. 1994).

■ Applying that test to the conduct at issue here—JetBlue's handling of plaintiffs' luggage—we find that the conduct constitutes a "service" for purposes of ADA preemption. In Air Transport Association of America, Inc. v. Cuomo, 520 F.3d 218 (2d Cir. 2008), the Second Circuit tacitly endorsed an interpretation of "service" that includes baggage handling. Specifically, the Court held that a regulation "requiring airlines to provide food, water, electricity, and restrooms to passengers during lengthy ground delays" was sufficiently related to a "service" for purposes of ADA preemption. Id. at 222. In reaching that holding, the Court noted that a majority of circuits had interpreted "service" as referring to "the provision or anticipated provision of labor from the airline to its passengers *and encompasses matters such as* boarding procedures, *baggage handling*, and food and drink—matters incidental to and distinct from the actual transportation of passengers." Id. at 223 (emphasis added). Although it did not expressly adopt this definition, the Court rejected the minority view, which excluded baggage handling from the definition of "service" for ADA preemption, on the grounds that it was inconsistent with Supreme Court precedent. Id.

■ In addition, other district courts in this Circuit have found that an airline's baggage handling constitutes a "service" for purposes of ADA preemption. In determining whether conduct is a "service," courts look to whether "the activity in question is ordinary and relates directly to air travel." Abdel–Karim, 116 F.Supp.3d at 405 (quoting Weiss v. El A. Isr. Airlines, Ltd., 471 F.Supp.2d 356, 361 (S.D.N.Y. 2006)). Applying this standard, courts have found that baggage handling "is clearly 'ordinary and relates directly to air travel,' as it is usual for passengers to bring luggage with them when traveling and it is a customary practice for airlines to check that luggage." Bary v. Delta Airlines, Inc., No. CIV.A.CV025202 (DGT), 2009 WL 3260499, at *11 (E.D.N.Y. Oct. 9, 2009), aff'd, 553 Fed.Appx. 51 (2d Cir. 2014); see also Abdel–Karim, 116 F.Supp.3d at 405 (same). We agree with these courts and find that JetBlue's handling of plaintiffs' luggage is a "service" for purposes of ADA preemption.

■ Plaintiffs' tort claims also satisfy the second prong of the preemption test. Plaintiffs' bailment, negligence, and failure to supervise claims challenge the adequacy of JetBlue's baggage handling policies and procedures and therefore "affect[ ] the airline service directly," rather than "tenuously, remotely, or peripherally. See, e.g., Bary, 2009 WL 3260499, at *12 ("[P]laintiff's claims, which allege the negligent handling of his checked luggage, directly, as opposed to remotely or tenuously, affect the airline's baggage handling service."); see also Malik v. Cont'l Airlines Inc., 305 Fed.Appx. 165, 169 (5th Cir. 2008) ("[W]e fail to see how permitting airline passengers to bring state tort claims based on lost luggage (however it came to be lost) can be characterized as 'remotely' connected to baggage handling services. Such claims strike at the very heart of a 'service' that Congress intended to protect from state regulation.").

■ Finally, plaintiffs' claims satisfy the test's third prong because the tortious conduct underlying plaintiffs' claims—JetBlue's baggage handling procedures—is

"reasonably necessary" to the provision of the service. See, e.g., Abdel–Karim, 116 F.Supp.3d at 406; (finding prong satisfied where "the plaintiff has not demonstrated that the defendants did anything but follow their own baggage handling procedures").

Plaintiffs attempt to avoid this conclusion by arguing that the underlying tortious conduct is theft, which they argue is not reasonably related to the proper provision of baggage handling services. While plaintiffs are correct that a theft claim may not be preempted by the ADA (even if it would face other challenges), plaintiffs have not accused JetBlue of theft. Rather, they accuse JetBlue of negligence arising from its baggage handling procedures, which satisfies the third prong of the test. See, e.g., Bary, 2009 WL 3260499, at *12 ("[T]he loss of plaintiff's personal items allegedly transpired while Delta was providing the baggage handling service and plaintiff has presented no evidence demonstrating that the service was unreasonably performed. Plaintiff speculates that the jewelry in his merchandise bag might have been stolen by defendant's employees. Other than these conclusory allegations, however, there is nothing to indicate that Delta's conduct in handling his merchandise bag was either 'outrageous or unreasonable.' ").

■ Finally, plaintiffs argue that the ADA's preemption provision does not apply because jewelry falls within an exemption for "household goods." However, the ADA has two preemption provisions, compare 49 U.S.C. § 41713(b)(1) (preempting state laws and regulations relating to carriers that provide "air transportation"), with id. § 41713(b)(4) (preempting state laws and regulations relating to carriers "transporting property"), and the "household goods" exemption does not apply to the preemption provision applicable here, see id. § 41713(b)(4)(B)(ii).

Accordingly, we find that the ADA preempts plaintiffs' tort claims.

## B. Breach of Contract

Plaintiff also brings a contract claim, alleging that JetBlue's failure to deliver the jewelry to plaintiffs in Los Angeles constitutes a breach of contract. JetBlue argues that (1) plaintiffs fail to adequately plead a breach, (2) the contract expressly excludes liability for carriage of jewelry, and (3) the contract limits damages to $3,400.

### 1. Failure to Adequately Allege Breach

■ We agree with JetBlue that the Amended Complaint fails to adequately allege a breach. "For a breach of contract claim, Plaintiff must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." Valentini v. Citigroup, Inc., 837 F.Supp.2d 304, 327 (S.D.N.Y. 2011) (internal quotation marks omitted).

■ Although plaintiffs allege generally that they "entered into a contract" with JetBlue, see Am. Compl. ¶ 100, they fail to identify any provision that was breached as a result of JetBlue's purported failure to deliver the jewelry. Plaintiffs merely allege that "pursuant to the terms of the contract, Plaintiffs reasonably believed that their property would be safely delivered from JFK to LAX by Defendant JetBlue in a safe condition" and that "JetBlue failed to deliver the property to Plaintiffs at LAX." Id. ¶¶ 104–06. Plaintiffs do not point to any language that would give rise to such a "reasonable belief," and therefore have not adequately pleaded a breach, warranting dismissal. See Valentini, 837 F.Supp.2d at 327 (dismissing breach of contract claim "because Plaintiffs fail to identify what specific provisions of the contract they claim Defendants breached").

### 2. Liability for Carriage of Jewelry

■ JetBlue also argues that the agreement between plaintiffs and JetBlue incorporates terms expressly excluding liability for carriage of jewelry.

■ Plaintiffs, as with any customer who buys an online ticket from JetBlue, entered into an agreement that incorporates JetBlue's "Contract of Carriage" by reference. See Decl. of Brian Friedman (ECF No. 35) ("Friedman Decl."), Ex. B at 4 (copy of JetBlue electronic ticket stating that "All travel on JetBlue ... is subject to JetBlue's Contract of Carriage, the terms of which are incorporated herein by reference").[2] JetBlue's then-operative Contract of Carriage provides

> For ... domestic transportation, Carrier will not accept for carriage ... jewelry ..., heirlooms, ... and similar valuables contained in checked or unchecked baggage.... Passengers are encouraged to carry such valuable items personally.... [I]f any valuable items of the type described in this paragraph are lost, damaged, or delayed, Passenger will not be entitled to any reimbursement or compensation from Carrier.

Friedman Decl., Ex. A ¶ 18(F).

Plaintiffs do not dispute that their electronic tickets contained terms incorporating JetBlue's Contract of Carriage by reference. Instead, plaintiffs argue that they never received the Contract of Carriage and "there was no way for Plaintiffs to have read the [Contract of Carriage], as it appears that there was no link to [it]" on the electronic tickets. Pls.' Mem. of Law in Opp. to Mots. to Dismiss (ECF No. 41) at 19. Plaintiffs' excuse is no defense. Plaintiffs are on constructive notice of the Contract of Carriage terms and cannot escape

its terms by claiming that they did not bother to read them. See, e.g., Nicosia v. Amazon.com, Inc., 834 F.3d 220, 232 (2d Cir. 2016) ("As with paper contracts ..., to be bound, an internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence.").

Moreover, federal regulations provide that an airline "ticket or other written instrument that embodies the contract of carriage may incorporate contract terms by reference (i.e., without stating their full text)," as long as notice is provided. 14 C.F.R. §§ 253.4; 253.5(a); see also Fondo v. Delta Airlines, Inc., No. 00 CIV. 2445 (JSM), 2001 WL 604039, at *3 (S.D.N.Y. May 31, 2001) ("An airline ticket, as supplemented by the carrier's tariff, embodies the contract of carriage between the airline and its passenger." (citing 14 C.F.R. § 253.4)), aff'd, 25 Fed.Appx. 82 (2d Cir. 2002).

Here, JetBlue's electronic tickets stated that the Contract of Carriage "may be inspected at all JetBlue airport customer service counters, and upon request you have the right to receive by mail a copy of the full text of the Contract of Carriage.... Additional information [on limitations on baggage liability and other topics] can be obtained on JetBlue's website at www.JetBlue.com or at any U.S. location where JetBlue transportation is sold." Friedman Decl., Ex. B at 4. Accordingly, JetBlue provided notice sufficient to incorporate the Contract of Carriage by reference under federal regulation. See 14 C.F.R. §§ 253.4(b)–(c); 253.5(a) (providing notice requirements).

---

**2.** We may consider the terms of plaintiffs' electronic tickets and JetBlue's Contract of Carriage because they are part of the contract that is at issue and therefore integral to the Amended Complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Nicosia v. Amazon.com, Inc., 834 F.3d 220, 234 (2d Cir. 2016).

Courts in this Circuit have found similar notices of incorporation sufficient to bind passengers, regardless of whether they read the carriage contract. See, e.g., Dennis v. Delta Air Lines, Inc., No. 10-CV-973 DLI LB, 2011 WL 4543487, at *3 (E.D.N.Y. Sept. 29, 2011) (rejecting argument that passenger was not bound by contract terms that were validly incorporated into ticket by reference even though passenger did not review the terms); Reed v. Delta Airlines, Inc., No. 10 CIV. 1053 JGK, 2011 WL 1085338, at *3 (S.D.N.Y. Mar. 23, 2011) (finding that "Delta's International Conditions of Carriage were incorporated by reference in Delta's contract of carriage with the plaintiff, and are therefore enforceable as part of the contract").

 Plaintiffs next argue that the Contract of Carriage liability limitation does not apply because their jewelry was "deliberately taken" rather than "lost, damaged, or delayed." That argument also fails. In focusing on the phrase "lost, damaged, or delayed," plaintiffs ignore the provision's broader language stating that JetBlue "will not accept for carriage ... jewelry." That language absolves JetBlue from all liability resulting from carriage of the jewelry, regardless of whether "lost" or "deliberately taken." Accordingly, we find that JetBlue's Contract of Carriage precludes plaintiffs from holding JetBlue liable for their injury alleged here.

### 3. Limitation of Liability to $3,400

Because we find that plaintiffs may not maintain an action for the alleged jewelry loss, we do not consider whether a viable

claim would be limited to a recovery of $3,400 under the Contract of Carriage.

## III. TSA

 The TSA argues that plaintiffs have failed to state a bailment claim and that the remaining claims brought against it are barred under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 2671, et seq. We agree.[3]

### A. Bailment Claim

 Under New York law,[4] a bailee who fails to return a bailor's property is presumed negligent. See, e.g., Khaldei v. Kaspiev, 135 F.Supp.3d 70, 79 (S.D.N.Y. 2015); Maisel v. Gruner & Jahr USA, Inc., 89 A.D.2d 503, 504, 452 N.Y.S.2d 192, 193 (N.Y. App. Div. 1st Dep't 1982). In order for a bailment to arise, "there must be a full transfer of property so as to exclude the possession of the owner and all other persons and give to bailee sole custody and control thereof." Moore–McCormack Lines, Inc. v. Int'l Terminal Operating Co., 619 F.Supp. 1406, 1425 (S.D.N.Y. 1985) (internal quotation marks omitted); see also Man Ferrostaal, Inc. v. M/V Akili, 704 F.3d 77, 88 (2d Cir. 2012) (a "bailment does not arise unless delivery to the bailee is complete and he has exclusive possession of the bailed property"). Thus, where "possession of the property was not exclusive, [the] presumption of negligence on the part of the bailee [is] inappropriate." Charles J. King, Inc. v. Barge LM–10, 518 F.Supp. 1117, 1124 (S.D.N.Y. 1981).

 The Amended Complaint fails to state a bailment claim against the TSA

---

**3.** The TSA is not a proper defendant to a tort claim under the FTCA. See, e.g., Mignogna v. Sair Aviation, Inc., 937 F.2d 37, 40 (2d Cir. 1991) ("[A]n action [under the FTCA] must be brought against the United States rather than an agency thereof."). However, since we dismiss the claims against the TSA, there is no

need to substitute the United States as a party.

**4.** Under the FTCA, we apply the law of the state in which the acts or omissions at issue occurred. See Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). Here, neither party disputes that New York law applies.

because plaintiffs do not allege that the TSA had sole and exclusive control over the luggage when the jewelry was allegedly stolen. At most, plaintiffs allege that the jewelry was stolen when it was in the possession of *either* the TSA *or* JetBlue. Am. Compl. ¶¶ 54–61; see also id. ¶ 56 ("Defendant TSA employees and/or Defendant JetBlue employees opened the suitcase and removed the property from the jewelry roll."). That uncertainty is fatal to plaintiffs' bailment claim, because a presumption of negligence is inappropriate (and indeed illogical) where a defendant lacks sole possession of the property when it goes missing. See, e.g., Amberg–Blyskal v. Transp. Sec. Admin., No. CIV.A. 10-06818, 2011 WL 4470883, at *3 (E.D. Pa. Sept. 26, 2011) (dismissing bailment claim against TSA where plaintiff alleged that "*either* the TSA or U.S. Airways had possession of her luggage at the time of the alleged theft").

Plaintiffs' reliance on Williams v. United States, No. 4:11-CV-02316-RBH, 2012 WL 3638788 (D.S.C. Aug. 22, 2012), is misplaced. There, the court found that plaintiff had stated a bailment claim under Illinois law because he had alleged that his property went missing while in the TSA's exclusive possession, even though the TSA subsequently relinquished control of the property to the airline. Id. at *3. In contrast, plaintiffs have not alleged exclusive control here and therefore have failed to state a bailment claim.

▮▮▮ Plaintiffs' bailment claim faces another flaw. Plaintiffs allege that either a TSA or JetBlue employee stole the jewelry. See Am. Compl. ¶ 56. However, a bailee is not an insurer and is only liable for theft resulting from the bailee's own negligence.

See Castorina v. Rosen, 290 N.Y. 445, 447, 49 N.E.2d 521, 522 (1943). To hold the TSA liable for the theft, therefore, plaintiff would need to establish that the TSA negligently failed to prevent the theft. But such a claim would be identical to plaintiffs' negligence claims, which, as discussed below, are barred under the FTCA. Accordingly, plaintiffs cannot circumvent the FTCA by merely recasting its negligence claims in bailment terms.

## B. Negligence and Failure to Supervise Claims

Plaintiffs' remaining claims allege that the TSA was negligent in failing to "institute adequate security measures," "warn Plaintiffs that their property may be stolen or lost," and "protect Plaintiffs against such theft." Am. Compl. ¶¶ 71, 78, 86. Plaintiffs also claim that the TSA failed to adequately supervise its employees.

### 1. Immunity Under the FTCA

The TSA argues that plaintiffs' remaining claims are barred because they fall under the FTCA's "discretionary function exception." We agree.[5]

▮▮▮ Under the traditional doctrine of sovereign immunity, the United States is immune from suit unless it has waived immunity. Coulthurst v. United States, 214 F.3d 106, 108 (2d Cir. 2000). One such waiver is the FTCA, which permits suits against the United States for the negligence of its employees. Id. The FTCA provides the basis of plaintiffs' claims against the TSA here.

▮▮▮ The FTCA's "discretionary function exception" precludes "[a]ny claim . . . based upon the exercise or perform-

---

5. The TSA also argues the United States may not be sued for theft because theft is not within a federal employee's scope of authority. See 28 U.S.C. § 1346(b)(1). However, as discussed above in the context of the claims against JetBlue, plaintiffs are not seeking to hold the TSA liable for theft. Instead, plaintiffs are seeking to hold the TSA liable for negligently failing to prevent the theft.

ance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency . . ., whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).[6] As interpreted by the courts, the discretionary function exception only applies if "(1) the acts alleged to be negligent [are] discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question [is] grounded in considerations of public policy or susceptible to policy analysis." Coulthurst, 214 F.3d at 109 (internal quotation marks omitted). The exception's purpose "is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. Gaubert, 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (internal quotation marks omitted). Thus it applies even in the abuse of discretion. See 28 U.S.C. § 2680(a)

█ Applying this test, we find that plaintiffs' claims fall within the exception. Counts II through IV allege that defendants variously failed to "institute adequate security measures to deter their employees from" theft, "warn Plaintiffs that their property may be stolen or lost,"[7] "protect Plaintiffs against such theft by their agents and employees," and "protect Plaintiffs' property by not delivering it to Plaintiffs." Am. Compl. ¶¶ 71, 78, 86. This conduct—which relates to the degree of oversight the TSA imposes on its agents, its procedures for handling luggage, and the warnings it gives passengers—is discretionary and neither party has pointed to a statute or regulation that governs the

TSA's discretion in such matters. As alleged in the Amended Complaint, the conduct is also grounded in considerations of public policy, since additional warnings, oversight, or baggage handling procedures could impose public costs or slow the security review process. Accordingly, we find that plaintiffs' negligence claims are barred by the TSA. See, e.g., Callahan v. United States, 329 F.Supp.2d 404, 409 (S.D.N.Y. 2004) ("Several Circuit Courts of Appeal have concluded that security related decisions, including decisions involving how much security to provide and the manner in which to provide it, are the types of public policy judgments that fall within the discretionary function exception."); Rao v. United States, No. CIV. A. 08-12027-MBB, 2010 WL 3607143, at *8 (D. Mass. Sept. 9, 2010) (applying discretionary function exception to claim that TSA negligently operated security screening area causing plaintiff to trip over bin and noting that "[i]t is not this court's role to second guess the layout of TSA security checkpoints, nor is it within the purview of this court to determine the appropriate personnel allocation throughout a security checkpoint area").

█ Likewise, we find that plaintiffs' failure to supervise claim is barred by the discretionary function exception. Plaintiffs allege that the TSA "knew that some employees and/or agents might take property that did not belong to them, or should have known of such propensity had [it] conducted an adequate hiring procedure." Am. Compl. ¶ 93. As above, the TSA's degree of supervision and its hiring procedures are discretionary acts, and neither party has pointed to a regulation or statute that

---

**6.** The parties primarily focus on whether the discretionary function exception bars plaintiffs' failure to supervise claim rather than whether it also applies to plaintiffs' negligence claims. Nevertheless, we pass on the

issue here since it goes to our subject matter jurisdiction over the claims.

**7.** Plaintiffs acknowledge that the TSA warns passengers that their property will be subject to screening. See Am. Compl. ¶ 15.

compels the TSA to follow certain procedures that would be relevant here. The TSA's oversight and hiring procedures also clearly involve matters of public policy. Accordingly, courts frequently find that "[i]ssues of employee hiring, supervision, and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception." 16 Moore's Fed. Practice, Civ. § 105.26(2)(a.1)(iv) (2016) (collecting cases); see also Li v. Aponte, No. 05 CIV. 6237 (NRB), 2008 WL 4308127, at *8 (S.D.N.Y. Sept. 16, 2008) (finding that "personnel decisions of the United States generally fall within the discretionary function exception to the FTCA" and collecting cases); Amberg–Blyskal, 2011 WL 4470883, at *2 n.2 (dismissing failure-to-supervise claim against TSA in connection with stolen jewelry as falling under the discretionary exception function).

Plaintiffs offer no meaningful response as to why its claims do not fall within the FTCA's discretionary function exemption. Instead, plaintiffs merely cite to various cases regarding the duty to protect individuals from harm. The existence of a duty, however, has no bearing on whether the United States waived sovereign immunity under the FTCA to permit the types of claims plaintiffs assert here.

### 2. Failure to State a Claim

Because we lack subject matter jurisdiction over plaintiffs' negligence and failure to supervise claims, we do not consider whether they are also subject to dismissal under Rule 12(b)(6). However, we note that it is far from clear that plaintiffs have adequately alleged any element of a negligence claim. For example, it is not clear that the TSA owed plaintiffs any duty; plaintiffs have not identified any specific conduct that would constitute a breach of a duty; and plaintiffs may not be able to allege causation since they do not know whose possession the luggage was in when the jewelry went missing.

### CONCLUSION

For the above reasons, defendants' motions to dismiss are granted. This Memorandum and Order resolves Docket Nos. 34 and 37, and the Clerk of the Court is directed to dismiss the action.

**SO ORDERED.**