**10-516-cv**
*Goodspeed Airport v. Dep't of Envtl. Prot. et al.*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2010

(Argued: January 10, 2011      Decided: February 10, 2011)

Docket No. 10-516-cv

GOODSPEED AIRPORT LLC,

*Plaintiff-Appellant*,

–v.–

EAST HADDAM INLAND WETLANDS & WATERCOURSES COMMISSION, JAMES VENTRES,

*Defendants-Appellees*,

STATE OF CONNECTICUT,

*Amicus Curiae.*[*]

Before:

POOLER, KATZMANN, and WESLEY, *Circuit Judges*.

Appeal from judgment of the United States District Court for the District of Connecticut (Kravitz, *J.*), entered on January 13, 2010 after bench trial, in favor of Defendants-Appellees, determining that the Connecticut Inland Wetlands and Watercourses Act and the Connecticut Environmental

---

[*]The Clerk of the Court is directed to amend the official caption in accordance with this opinion.

Protection Act, as well as municipal regulations pursuant thereto (specifically the imposition of a permit requirement on cutting trees on protected wetlands), are neither expressly nor impliedly preempted by the Federal Aviation Act, the Airline Deregulation Act, or Federal Aviation Agency regulations promulgated thereunder.

**AFFIRMED.**

---

DEAN M. CORDIANO, Day Pitney LLP, Hartford, CT (René A. Ortega, John R. Bashaw, *on the brief*), *for Plaintiff-Appellant*.

KENNETH J. MCDONNELL, Gould, Larson, Bennet, Wells & McDonnell, P.C., Essex, CT, *for Defendants-Appellees*.

MARY K. LENEHAN, Assistant Attorney General (*for* Richard Blumenthal, Attorney General of the State of Connecticut), Hartford, CT, *for Amicus Curiae*.

---

WESLEY, *Circuit Judge*:

Plaintiff-Appellant Goodspeed Airport LLC appeals from a judgment of the United States District Court for the District of Connecticut (Kravitz, *J.*), entered after a bench trial, in favor of Defendants-Appellees East Haddam Inland Wetlands and Watercourses Commission and James Ventres. Goodspeed Airport sought declaratory and injunctive relief establishing and protecting its right to cut certain trees on its property,

part of which is protected wetlands.  Under Connecticut law and municipal regulations, a person must apply for permission to undertake activities affecting wetlands.  We write to clarify what to date this Court has suggested only in *dicta*: that Congress has established its intent to occupy the entire field of air safety, thereby preempting state regulation of that field.  However, the state and local laws and regulatory scheme at issue in the instant appeal do not sufficiently intrude upon the field of air safety to be preempted.  Nor are they expressly preempted by the Airline Deregulation Act. Accordingly, the judgment of the district court is **AFFIRMED.**

**I. BACKGROUND**

The facts of this case, as well as the statutory and regulatory context, are discussed at length in the district court's thorough and well-reasoned opinion.  *Goodspeed Airport, LLC v. East Haddam Inland Wetlands & Watercourses Comm'n* (*Goodspeed*), 681 F. Supp. 2d 182 (D. Conn. 2010).  We discuss only those aspects of the case necessary to an understanding of the issues presented on appeal.

Appellant Goodspeed Airport (the "Airport") is a small,

state-licensed, privately owned and operated commercial airport in East Haddam, Connecticut. Appellee James Ventres is the enforcement officer for Appellee East Haddam Inland Wetlands and Watercourses Commission ("IWWC").

The IWWC is a municipal regulatory body established pursuant to the Connecticut Inland Wetlands and Watercourses Act ("IWWA"). The IWWA declares that it is "the public policy of [Connecticut] to require municipal regulation of activities affecting the wetlands and watercourses within the territorial limits of the [state's] various municipalities or districts." Conn. Gen. Stat. § 22a-42(a). The IWWC may issue cease and desist orders and bring actions to enforce the act's provisions. Persons within its jurisdiction are required to apply to the IWWC for permission before undertaking activities affecting protected land.

The Airport's property is partly composed of protected wetlands. This protected land contains trees and other vegetation which the Airport wishes to cut down. In January 2001, the IWWC issued Goodspeed a Cease and Desist Order (the "Order") instructing it to refrain from "all regulated activity within seventy-five feet of inland/wetlands and watercourses (regulated areas) on your property[.]" The Order

cited as its authority certain regulations of the Town of East Haddam, adopted and promulgated under Connecticut General Statute Section 22a. This Order was later withdrawn, but Appellees continue to assert that the Airport is obliged to obtain a permit before cutting the trees.

The Airport contends – and Appellees do not contest – that some of the trees it wishes to cut down fall within the definition of "obstructions to air navigation" under 14 C.F.R. Part 77 ("FAA Regulations"). The FAA Regulations establish standards for identifying these obstructions, defining an imaginary surface in the shape of a bowl around regulated runways. *Id.* § 77.23. Objects breaching this imaginary surface are declared to be obstructions.[1] *Id.*

The Airport argues that, since these trees qualify as obstructions, they are therefore hazards to air navigation under the FAA Regulations and the otherwise applicable state and local statutory and regulatory framework establishing the IWWC's permit process is preempted. Specifically, the Airport

---

[1]Appellees contend that, while the FAA Regulations provide a definition of "obstructions," obstructions are not *ipso facto* "hazards to air navigation" absent a specific determination of that status by the FAA. We need not decide whether the FAA Regulations would preempt the state and local laws, regulations, and actions challenged here if the trees were declared hazards and their removal ordered by the FAA. Significantly, in this case the federal government renounced any intention – indeed, questioned whether it had the authority – to declare the trees hazards and/or to order their removal.

contends it should be allowed to take whatever steps are necessary to remove the trees without first applying for a permit, and that both IWWA and the Connecticut Environmental Protection Act ("CEPA," codified at Conn. Gen. Stat. §§ 22a-14 to 22a-20) are preempted as to any restriction they might otherwise impose on this activity.

The Airport offers two theories of preemption. First, it argues that the state and local statutes, regulations and actions pursuant to IWWA and CEPA are impermissible intrusions upon a field of regulation which Congress (via the Federal Aviation Act of 1958 ("Aviation Act") and the FAA Regulations promulgated thereunder) has indicated its intent to entirely occupy. Second, the Airport argues for express preemption pursuant to language in the Airline Deregulation Act of 1978 ("ADA").

The Airport sought a declaratory judgment establishing its right to cut down the trees without applying to the IWWC for a permit. It also sought to enjoin the defendants from bringing any action under state or local law to prohibit or otherwise regulate the removal of any trees constituting

obstructions to air navigation.[2]  After a bench trial, the district court ruled that neither theory of preemption was established.  Specifically, the district court found that, while Congress in passing the Aviation Act intended to occupy the entire field of air safety, the state and local statutes, regulations and actions in question do not intrude into that field and are therefore not field-preempted.  Further, the district court found no express preemption as a result of the ADA language.  The Airport timely appealed from this judgment.  For the reasons stated below, we agree with the district court on all points.

**II. DISCUSSION[3]**

Federal preemption of state law can be express or

---

[2]The Connecticut Environmental Protection Agency and one of its officers were also named in the complaint.  The district court found that the Airport had failed to allege that the state defendants were involved in an ongoing violation of or threatening to violate federal law; accordingly, they were entitled to Eleventh Amendment immunity.  Although the court urged the state defendants not to exercise the privilege, they refused to waive it and the claims against them were dismissed. *Goodspeed Airport, LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 632 F. Supp. 2d 185, 188, 189-90 (D. Conn. 2009) (published ruling and order of dismissal).  The State of Connecticut later appeared as *amicus curiae*.

[3]"We review *de novo* a district court's application of preemption principles." *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010) (per curiam).  Findings of fact in a bench trial are reviewed for clear error; application of law to those facts is reviewed *de novo*. *Bessemer Trust Co., N.A. v. Branin*, 618 F.3d 76, 85 (2d Cir. 2010).

implied. *See New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (per curiam).[4] To establish implied preemption, evidence of Congressional intent to displace state authority is required. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). There is a rebuttable presumption against the preemption of the states' exercise of their historic police power to regulate safety matters. *See New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 123 (2009) (citing *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 718 (1985)).

The Airport argues that, once a tree becomes an "obstruction" to air navigation under the FAA Regulations, the local permit process becomes *ipso facto* inapplicable to the Airport's efforts to trim or remove that tree. However, it does not claim that the permit process is entirely preempted or invalidated by federal law, merely that it cannot operate so as to interfere with the removal of obstructions to air navigation.

Generally, facial challenges must demonstrate that there

---

[4]*Clarkstown* discusses the three recognized forms of preemption: express preemption and the two types of implied preemption, "field" and "conflict." These categories are not rigidly distinct; for example, it may be possible to recast field preemption as a subset of conflict preemption. *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 n.5 (1990).

is no possible set of conditions under which the challenged state permit process could be constitutional. *See, e.g.*, *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 580 (1987). However, this showing need not be made when a plaintiff claims that "what is preempted [ ] is the permitting process itself, not the length or outcome of that process in particular cases." *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 644 (2d Cir. 2005).

On their face, the IWWA, CEPA, and the local permit process established pursuant thereto do not address issues of air safety. Nor do they prohibit removal of the trees; they merely impose a permit requirement on their removal. A proper examination of the Airport's claim therefore requires us to consider whether federal law occupies the field of air safety, and if it does, whether the state laws and regulations intrude upon that field.

"The United States Government has exclusive sovereignty of airspace of the United States." 49 U.S.C. § 40103(a)(1). The district court took this language, as well as the overall statutory and regulatory scheme initiated by the Aviation Act, as evidence of "a clear congressional intent to occupy the entire field of aviation safety to the exclusion of state

law." *Goodspeed*, 681 F. Supp. 2d at 201.

In *Air Transport Ass'n of America, Inc. v. Cuomo* (*ATA*), 520 F.3d 218, 225 (2d Cir. 2008), this Court observed that several of our sister circuits, and several district courts within our own circuit, have concluded that Congress intended to occupy the entire field of air safety and thereby preempt state regulation of that field. *ATA* examined evidence of Congressional "intent to centralize air safety authority and the comprehensiveness of [ ] regulations pursuant to that authority," under both the Aviation Act and the ADA. *Id*. However, as the district court was careful to observe, *ATA* stopped short of formally holding that Congress intended to occupy the field of air safety. *See Goodspeed*, 681 F. Supp. 2d at 199. Today we join our sister circuits.[5]

But concluding that Congress intended to occupy the field of air safety does not end our task. As the district court recognized, the inquiry is twofold; we must determine not only Congressional intent to preempt, but also the scope of that

---

[5] *ATA*, 520 F.3d at 225, collects the relevant circuit cases through 2008. Since then, at least one additional circuit has held that Congress intended to occupy the field of air safety. *See US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1326 (10th Cir. 2010); *see also Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007); *Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 795 (6th Cir. 2005); *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 367-68 (3d Cir. 1999); *French v. Pan Am Express, Inc.*, 869 F.2d 1, 5 (1st Cir. 1989).

preemption. "The key question is thus at what point the state regulation sufficiently interferes with federal regulation that it should be deemed pre-empted[.]" *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 107 (1992). We agree with the district court that although Congress intended to occupy the entire field of air safety, the state laws at issue here do not interfere with federal laws and regulations sufficiently to fall within the scope of the preempted field. *Goodspeed*, 681 F. Supp. 2d at 201-02.

The district court correctly distinguished a recent case, also from the District of Connecticut, which held that the Aviation Act impliedly preempts certain town regulatory actions.[6] *Tweed-New Haven Airport Auth. v. Town of East Haven, Conn. (Tweed)*, 582 F. Supp. 2d 261, 267 (D. Conn. 2008). There, municipal defendants sought to prevent a commercial airport from "obstruct[ing] construction of a federally-mandated, federally-funded, and state- and federally-approved" runway project intended to enhance aviation safety. *Id*. at 263.

The local regulatory action at issue in *Tweed* constitutes

---

[6]The district court in *Tweed* rejected the claim that these regulatory actions were expressly preempted by the language of the Airline Deregulation Act discussed below. 582 F. Supp. 2d at 268.

a much more direct intrusion of local authority on the preempted field of air safety than do the regulatory actions challenged here. Unlike Tweed-New Haven Airport, Goodspeed Airport is not licensed by the FAA; it is not federally funded, and no federal agency has approved or mandated the removal of the trees from its property. Indeed, in its response to a formal inquiry from the district court in this case, the federal government disclaimed any authority to order the trees' removal.[7] Therefore, while in *Tweed* the construction project was approved, indeed required, by the federal regulatory authority, in this case there is no federal interest in the Airport's proposed actions.

Moreover, IWWA and CEPA are environmental laws that do not refer to aviation or airports. Neither statute prohibits the trimming or removal of any tree located in a protected area. Instead, the Wetlands Act requires only that Appellant obtain a permit before removing the trees in question. *See* Conn. Gen. Stat. § 22a-42a. Thus, Appellant's contention that

---

[7]As the response was not the product of formal rulemaking, the district court afforded it limited *Skidmore/Mead* deference. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also United States v. Mead Corp.*, 533 U.S. 218, 234-35 (2001). Further, the district court confined its consideration of the response to its discussion of the Airport's field preemption claim, as the court's ruling on the express preemption claim depended on certain factual findings, *Goodspeed*, 681 F. Supp. 2d at 192-98, unavailable to the federal Government. *Id.* at 213 n.11. In any event, the district court explicitly noted that it would have reached the same result even had it afforded the response no deference at all. *Id.* at 213, 214.

Page 12 of 15

IWWA and CEPA have the impermissible "effect" of "prohibiting the removal of the obstructions" under the Aviation Act, Appellant's Brief at 20, is unsupported. "[P]art of the pre-empted field is defined by reference to the purpose of the state law in question . . . another part of the field is defined by the state law's actual effect[.]" *English v. Gen. Elec. Co.*, 496 U.S. 72, 84 (1990). The state laws at issue here do not enter the scope of the preempted field in either their purpose or their effect.

In occupying the field of air safety, Congress did not intend to preempt the operation of state statutes and regulations like the ones at issue here, especially when applied to small airports over which the FAA has limited direct oversight. Appellant's contention that the IWWC's permit application process is impliedly preempted by federal law is without merit.

Appellant also argues that both IWWA and CEPA are expressly preempted by language in the Aviation Act, as modified by the ADA, codified at 49 U.S.C. § 41713(b)(1):

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, rule, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may

provide air transportation under this subpart.

In *ATA*, this Court found the New York Passenger Bill of Rights expressly preempted by § 41713(b)(1): "We hold that requiring airlines to provide food, water, electricity, and restrooms to passengers during lengthy ground delays does relate to the service of an air carrier and therefore falls within the express terms of the ADA's preemption provision." 520 F.3d at 223. Today, by contrast, we hold that the ADA does not preempt applicable state and local environmental and land use statues and regulations that impose permit requirements whose impact on air carriers, if any, is remote. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992) (cautioning that, while even indirect impact on air carriers may be preempted, state action with "tenuous, remote, or peripheral" effects on air carriers is not preempted) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)).

The state and local statutes, regulations and actions at issue here are neither field-preempted by the language of the Aviation Act, nor expressly preempted by the ADA. Accordingly, Appellant is obliged to observe the appropriate state procedures.

**III. CONCLUSION**

Although we hold that Congress has indicated its intent to occupy the entire field of aviation safety, the generally applicable state laws and regulations imposing permit requirements on land use challenged here do not, on the facts before us, invade that preempted field. Further, the impact on air carriers of the laws and regulations at issue here, if any, is too remote to be expressly preempted under the terms of the Airline Deregulation Act. Accordingly, the district court's judgment of January 13, 2010 is hereby **AFFIRMED**.