# IN THE COURT OF APPEALS OF IOWA

No. 17-1458
Filed September 12, 2018

**THE CARROLL AIRPORT COMMISSION (OPERATING THE ARTHUR N. NEU MUNICIPAL AIRPORT),**
    Plaintiff-Appellee,

**vs.**

**LOREN W. DANNER and PAN DANNER,**
    Defendants-Appellants.
_____

    Appeal from the Iowa District Court for Carroll County, William C. Ostlund, Judge.


    The appellant landowners appeal from the district court ruling granting the local airport commission's petition for abatement of a nuisance, requiring the landowners to cease operation of and remove an improvement on their land. **AFFIRMED.**


    Steven D. Hamilton of Hamilton Law Firm, PC, Storm Lake, for appellants.

    Gina C. Badding of Neu, Minnich, Comito, Halbur, Neu & Badding, PC, Carroll, for appellee.


    Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

The defendants, Loren and Pan Danner, appeal from the district court ruling granting the Carroll Airport Commission's petition for abatement of a nuisance. The court determined the grain leg built by the Danners on their property, near the Arthur E. Neu Airport, was a nuisance, as it violated local and state zoning ordinances and statutes. The court ordered the Danners to "abate said nuisance by either removing the grain leg structure or modifying the height of the grain leg structure to be in compliance with the regulations and law concerning the Airport's protect[ed] airspace." On appeal, the Danners contend the "no hazard" letter they obtained from the Federal Aviation Administration (FAA) in July 2013 preempted the district court's enforcement of state law.

**I. Standard of Review.**

The parties dispute the scope of our review. The Danners maintain the petition was filed in equity and, as such, our review is de novo. *See* Iowa R. App. P. 6.907. The commission asserts our review is for correction of errors at law because while the petition was filed in equity, the case was tried at law since the trial court ruled on objections as they were made at trial. Ruling on objections at the time they are made in the course of trial has often been a determinative factor in deciding the case should be reviewed at law even though the case could have or perhaps even should have been tried in equity. *See Passehl Estate v. Passehl*, 712 N.W.2d 408, 414 (Iowa 2006). However, while it is a determinative factor, it is not dispositive as to how the case was tried at the district court level. *Id.*

Here, we need not decide how the case was tried to the district court because the only question before us is a legal question, which we review for

correction of errors at law. *See S.S. v. Iowa Dist. Ct.*, 528 N.W.2d 130, 132 (Iowa 1995) (stating that when an issue "is a purely legal question, . . . our review is at law").

## II. Discussion.

It is undisputed the Danners built a grain leg[1] within the protected zone of the airport.[2] After the Danners built the grain leg in June 2013, the commission contacted the FAA and asked it to perform an aeronautical study of the new structure and its impact on flying near the airport. The FAA did so and then issued a letter, stating in part, "This aeronautical study revealed that the structure does exceed obstruction standards but would not be a hazard to air navigation provided the following condition(s)" are met. As conditions, the FAA instructed the Danners to paint the structure and add red lights to the top of it; the Danners complied. Additionally, the FAA increased the minimum descent altitude for the airport by 100 feet, meaning pilots had to approach the airport at a higher altitude.

Because of its position and height within the protected zone, the grain leg constitutes an "airport hazard" pursuant to Iowa Code section 329.1(2) (2015) and local law.[3] An "airport hazard" is

> any structure or tree or use of land which would exceed the federal obstruction standards as contained in 14 C.F.R. § 77.21, 77.23 and 77.25 . . . which obstruct the air space required for the flight of aircraft and landing or take-off at an airport or is otherwise hazardous to such landing or taking off of aircraft.

---

[1] A grain leg, also known as a bucket elevator, is a mechanism for hauling grain vertically. The grain is then deposited into a grain bin.

[2] In layman's terms, the protected zone extends in an arc 10,000 feet from the end of a runway and vertically above the airport in the airspace above 150 feet. The grain leg sits approximately 7718 feet from the end of the runway and intrudes into the protected airspace by approximately 60 feet.

[3] Carroll County, Iowa, in ordinance 171.01(3) (Mar. 6, 1978), adopted the same definition of airport hazard.

Iowa Code § 329.1(2). The Danners concede, and the FAA found in its aeronautical study, that the grain leg exceeds the federal obstruction standards.

According to Iowa law, an airport hazard is a nuisance per se.

> It is hereby found that an airport hazard endangers the lives and property of users of the airport and of occupants of land and other persons in its vicinity, and also, if of the obstruction type, in effect reduces the size of the area available for the landing, taking off and maneuvering of aircraft, thus tending to destroy or impair the utility of the airport and the public investment therein. Accordingly, it is hereby declared:
> 1. That the creation or establishment of an airport hazard is a public nuisance and an injury to the community served by the airport in question.
> 2. That it is necessary in the interest of the public health, safety, and general welfare that the creation or establishment of airport hazards be prevented.
> 3. That this should be accomplished, to the extent legally possible, by proper exercise of the police power.
> 4. That the prevention of the creation or establishment of airport hazards, and the elimination, removal, alteration, mitigation, or marking and lighting of existing airport hazards are public purposes for which municipalities may raise and expend public funds, as an incident to the operation of airports, to acquire land or property interests therein.

*Id.* § 329.2.

Thus, the only question before us is whether the FAA's "determination of no hazard to air navigation" preempts the enforcement of state and local law, which the district court relied upon in ordering the Danners to abate the nuisance by either removing the grain leg completely or by modifying the height to lower it by at least sixty feet.

In other words, the Danners maintain we cannot apply the definition of airport hazard within Iowa law because the FAA's determination the grain leg was

not a hazard pursuant to federal definitions[4] preempts our application of Iowa law. And because the commission did not prove the grain leg was a nuisance under any other theory than "airport hazard," the order to abate cannot stand.

"The federal preemption doctrine derives from the Supremacy Clause of the Federal Constitution." *Huck v. Wyeth, Inc.*, 850 N.W.2d 353, 362 (Iowa 2014). "The United States Supreme Court has developed two broad categories of preemption of state law: express and implied." *State v. Martinez*, 896 N.W.2d 737, 746 (Iowa 2017). "Express preemption occurs when the federal statutory text clearly provides that congressional authority is exclusive." *Id.* The other category, implied preemption, which can be either field preemption or conflict preemption, arises even when there is no express provision in the federal statute preempting local law. *Id.* "Field preemption arises when Congress has enacted a comprehensive scheme." *Id.* In these cases, we can infer the congressional intent to preempt "from a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it.'" *Id.* (quoting *Rick v. Santa Fe Elevator Corp.*, 31 U.S. 218, 230 (1947)). "Conflict preemption occurs when a state law conflicts with a federal provision." *Id.* at 747. Within conflict preemption, there are two more subcategories. The first is when "compliance with the both federal and state regulation is a physical impossibility." *Id.* (quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963)). The other is "whenever two separate remedies are brought to bear on the same activity." *Id.*

---

[4] The FAA determined the structure exceeded obstruction limits but with the installation of special lighting would not be an airport hazard.

In considering whether the district court erred in its determination that the local law is not preempted by the FAA's finding of no hazard, we are guided, in part, by the "presumption against preemption which counsels a narrow construction of preemption provisions." *Huck*, 850 N.W.2d at 363.

We acknowledge "[t]he United States Government has exclusive sovereignty of airspace of the United States." 49 U.S.C.A. § 40103(a)(1). "But concluding that Congress intended to occupy the field of air safety does not end our task." *Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 210 (2nd Cir. 2011). "[W]e must determine not only Congressional intent to preempt, but also the scope of that preemption." *Id.* "'The key question is thus at what point the state regulation sufficiently interferes with federal regulation that it should be deemed pre-empted.'" *Id.* (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 107 (1992)).

While the Federal Aviation Act "remains the foundation of federal aviation law today," "it says only that the FAA may establish 'minimum standards' for aviation safety." *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 692 (3rd Cir. 2016) (citing 49 U.S.C. § 44701). The Supreme Court has considered the language of "minimum standards" in other contexts and found it to be "insufficient on its own to support a finding of clear and manifest congressional intent of preemption." *Id.* For example, in *Florida Lime and Avocado Growers, Inc. v. Paul*, the Supreme Court stated:

> Federal regulation by means of minimum standards of the picking, processing, and transportation of agricultural commodities, however comprehensive for those purposes that regulation may be, does not of itself import displacement of state control over the distribution and

retail sale of those commodities in the interests of the consumers of the commodities within the State.

373 U.S. at 145. Moreover, the local statutes and ordinances in question deal with both airspace and local use of land. *See Goodspeed Airport*, 634 F.3d at 212 ("In occupying the field of air safety, Congress did not intend to preempt the operation of state statutes and regulations like the ones at issue here [dealing with obtaining a permit before trimming or removing trees within wetlands], especially when applied to small airports over which the FAA has limited direct oversight."). For these reasons, we find there is no express preemption of the local statutes in this case.

Next, we consider whether there is implied preemption, which, as we have laid out above, can be either field preemption or conflict preemption. For similar reasons to those stated above, we do not believe the doctrine of field preemption is applicable. For it to apply, "'we must find that federal law leaves no room for state regulation and that Congress had a clear and manifest intent to supersede state law' in that field." *Sikkelee*, 822 F.3d at 687–88 (citation omitted). Here, the statute provides for the FAA to set the minimum standards, implying another body may lawfully impose greater standards. Moreover, in considering whether the no-hazard determination from the FAA for the grain leg was meant to supersede local law, we note that "[o]nce issued, a hazard/no hazard determination has no enforceable legal effect. The FAA is not empowered to prohibit or limit proposed construction it deems dangerous to air navigation." *Aircraft Owners v. Pilots Ass'n v. Fed. Aviation Admin.*, 600 F.2d 965, 966–67 (D.C. Cir. 1979); *but see Big Stone Broad., Inc. v. Lindbloom*, 161 F. Supp. 2d 1009, 1020 (D.S.D. 2001) ("As this court

reviewed the Act and relevant regulations, nothing could be found that confers upon the FAA the right to enforce its 'no hazard' determinations. However, this court will not jump to the conclusion that the FAA has no authority to enforce its own determination.").

Finally, we consider whether there is implied preemption by conflict. "This occurs when a state law conflicts with federal law such that compliance with both state and federal regulations is impossible, or when a challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of a federal law.'" *Sikkelee*, 822 F.3d at 688 (citations omitted). The federal regulation is meant to promote safety within aviation; rather than obstructing or creating an obstacle to that purpose, the local law is also designed to further that end. *See* Iowa Code § 329.2 (providing that because "an airport hazard endangers the lives and property of users of the airport and of occupants of land and other persons in its vicinity," it should be prevented or removed, as necessary). And compliance with both statutes is not impossible. While the state regulations impose a greater burden, complying with the local zoning ordinances does not make it impossible to also comply with the federal statute. This determination is further supported by the statement by the FAA on the no-hazard determination, which advised the Danners, "This determination concerns the effect of this structure on the safe and efficient use of navigable airspace by aircraft and does not relieve [the Danners] of compliance responsibilities relating to any law, ordinance, or regulation by any Federal, State, or local government body."

Because the application of local and state provisions defining the Danners' grain leg as an airport hazard and a nuisance is not preempted by the FAA's

determination that the grain leg is not a hazard, we affirm the district court's order requiring the Danners to abate the nuisance.

**AFFIRMED.**