Fabia v Power Auth. of the State of N.Y. (2026 NY Slip Op 01489)

Fabia v Power Auth. of the State of N.Y.

2026 NY Slip Op 01489

Decided on March 18, 2026

Appellate Division, Second Department

Ford, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 18, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
WILLIAM G. FORD
HELEN VOUTSINAS
LAURENCE L. LOVE, JJ.

2022-02598
 (Index No. 64091/19)

[*1]Scott Fabia, appellant, 
vPower Authority of the State of New York, etc., et al., respondents.

APPEAL by the plaintiff, in an action to recover damages for personal injuries, from an order of the Supreme Court (Janet C. Malone, J.), dated March 24, 2022, and entered in Westchester County. The order granted the defendants' motion pursuant to CPLR 3211(a)(7) to dismiss the complaint.

The Perecman Firm, PLLC, New York, NY (David H. Perecman and Peter D. Rigelhaupt of counsel), for appellant.
Goldberg Segalla, LLP, Albany, NY (Jonathan M. Bernstein of counsel), for respondents.

FORD, J.

OPINION & ORDER
The issue presented on this appeal is whether the Supreme Court erred in granting the defendants' motion pursuant to CPLR 3211(a)(7) to dismiss the complaint. For the reasons set forth below, we determine that the plaintiff's state law causes of action are preempted by federal law, but that the causes of action alleging common-law negligence and a violation of Labor Law § 200 should survive the defendant's motion pursuant to CPLR 3211(a)(7) to dismiss the complaint by substituting the federal standard of care.
I. Relevant Background
The defendant Power Authority of the State of New York (hereinafter NYPA) owned certain power lines located in Beekmantown. NYPA contracted with the defendants Northline Utilities, LLC, and Northline Ventures, Inc. (hereinafter together the Northline defendants), to perform repair work on those power lines. The Northline defendants subcontracted with Catalyst Aviation, LLC (hereinafter Catalyst), to transport the Northline defendants' linemen by helicopter to the power lines, thereby enabling the linemen to perform the repair work from an aerial platform attached to the helicopter.
On October 30, 2018, the plaintiff, a licensed pilot and Catalyst employee, was the co-pilot of the helicopter, which was owned by Catalyst. The helicopter also was carrying two linemen, who were employed by the Northline defendants. While the linemen were performing the repair work from the aerial platform of the airborne helicopter, the helicopter came into contact with the power lines, causing the helicopter to catch fire and ultimately crash. The plaintiff jumped from the helicopter when it was approximately 75 feet in the air and allegedly sustained injuries.
On September 10, 2019, the plaintiff commenced this action to recover damages for personal injuries. The plaintiff asserted causes of action alleging violations of Labor Law §§ 200, 240(1), and 241(6), and common-law negligence. NYPA and the Northline defendants interposed separate answers to the complaint. After the completion of discovery, NYPA and the Northline [*2]defendants jointly moved pursuant to CPLR 3211(a)(7) to dismiss the complaint, arguing, inter alia, that the plaintiff's causes of action were preempted by the Federal Aviation Act (FAA) and because state law conflicted with federal law with respect to the plaintiff's causes of action. In an order dated March 24, 2022, the Supreme Court granted the motion, finding that the plaintiff's causes of action were preempted because they conflicted with 14 CFR 91.13(a) and 91.3(a) and fell within the field of air safety, which Congress occupied. The plaintiff appeals.
II. Federal Preemption
"Under the doctrine of federal preemption, Congress may preempt state laws, either expressly or impliedly" (Sharabani v Simon Prop. Group, Inc., 96 AD3d 24, 28; see New York SMSA Ltd. Partnership v Town of Clarkstown, 612 F3d 97, 103-104 [2d Cir]). "Federal preemption of state laws generally can occur in three ways: 'where Congress has expressly preempted state law, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or where federal law conflicts with state law'" (Sharabani v Simon Prop. Group, Inc., 96 AD3d at 28, quoting Wachovia Bank, N.A. v Burke, 414 F3d 305, 313 [2d Cir]). A state law impliedly conflicts with federal law "where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (Freightliner Corp. v Myrick, 514 US 280, 287 [citation and internal quotation marks omitted]; see Sutton 58 Assoc. LLC v Pilevsky, 36 NY3d 297, 306).
"In all pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied, [courts must] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress" (Medtronic, Inc. v Lohr, 518 US 470, 485 [citation and internal quotation marks omitted]). "At bottom, this calls for an assessment of congressional intent" (Jones v Goodrich Pump & Engine Control. Sys., Inc., 86 F4th 1010, 1017 [2d Cir]).
A state action may proceed even if implicitly preempted, however, provided the preemption issue is limited to the standard of care and an appropriate federal standard of care can be substituted for the state standard of care (see Crout v Haverfield Intl., Inc., 269 F Supp 3d 90, 97 [WD NY]; Shupert v Continental Airlines, Inc., 2004 WL 784859, *6, 2004 US Dist LEXIS 6214, *19-20 [SD NY, No. 00 Civ. 2743 (LMM)]).
III. Federal Aviation Act
The FAA "'was enacted to create a uniform and exclusive system of federal regulation in the field of air safety . . . . [It] was passed by Congress for the purpose of centralizing in a single authority . . . the power to frame rules for the safe and efficient use of the nation's airspace'" (Tweed-New Haven Airport Auth. v Tong, 930 F3d 65, 74 [2d Cir], quoting Air Transp. Assn. of Am., Inc. v Cuomo, 520 F3d 218, 224 [2d Cir]).
Under federal aviation regulations, "[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another" (14 CFR 91.13[a]). Furthermore, "[t]he pilot in command of" a helicopter "is directly responsible for, and is the final authority as to, the operation of that aircraft" (id. § 91.3[a]).
Additionally, "Congress intended to occupy the entire field of air safety and thereby preempt state regulation of that field" (Goodspeed Airport LLC v East Haddam Inland Wetlands & Watercourses Commn., 634 F3d 206, 210 [2d Cir]; see Tweed-New Haven Airport Auth. v Tong, 930 F3d at 74). "Determining whether implied FAA[ ] field preemption applies in any particular case thus requires a 'twofold' inquiry: First, a reviewing court must determine whether a challenged state law falls within the 'field of air safety' as established by the FAA[ ], and second, it must determine whether 'the state regulation sufficiently interferes with federal regulation [such] that it should be deemed pre-empted'" (Jones v Goodrich Pump & Engine Control Sys., Inc., 86 F4th at 1017, quoting Goodspeed Airport LLC v East Haddam Inland Wetlands & Watercourses Commn., 634 F3d at 211).
IV. Common-Law Negligence and Relevant Labor Law Statutes
"Landowners and general contractors have a common-law duty to provide workers with a reasonably safe place to work" (Wejs v Heinbockel, 142 AD3d 990, 991). Labor Law § 200 is a codification of this common-law duty (see Agosto v Museum of Modern Art, 219 AD3d 674, 676). Labor Law § 240(1) provides, in relevant part, that:
"All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished [*3]or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed,"
while Labor Law § 241(6) provides that:
"All contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
. . .
6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."V. Scaletta v Michels Power, Inc.
The Appellate Division, Third Department, recently addressed the preemption issue at hand in its decision in Scaletta v Michels Power, Inc. (236 AD3d 1). In Scaletta, the defendant power company was contracted to repair power lines and subcontracted some of that work to an aviation company (see id. at 3). The aviation company sent a helicopter carrying the plaintiff, a lineman, to perform the repairs from an aerial platform attached to the airborne helicopter (see id.). The helicopter crashed after colliding with the power lines (see id.). The injured lineman commenced an action against, among others, the defendant power company, alleging, among other things, common-law negligence and violations of Labor Law §§ 200, 240(1), and 241(6) (see Scaletta v Michels Power, Inc., 236 AD3d at 3). As here, the defendant in Scaletta argued that those causes of action were field preempted, while the lineman argued that the helicopter "was essentially acting as a piece of construction equipment" (id. at 3-4).
The Third Department found that Congress did not intend for the FAA to preempt state workplace safety standards and, since the defendant did not own or operate the helicopter or accompany it to the worksite, that the effect of the lineman's claims would not interfere with air safety (see id. at 6-7). The Third Department found that the lineman's claims fell outside of the scope of the FAA's preemption of the field of air safety, concluding that "although plaintiff was injured when the helicopter he was working outside of lost control, his claims against defendant involve standards applicable to all construction workers facing elevation-related hazards in New York and have no obvious connection to the manner in which the helicopter was operated" (id. at 7).
VI. Analysis
A. Implied Field Preemption
"The United States Government has exclusive sovereignty of airspace of the United States" (49 USC § 40103[a][1]). As noted above, "Congress intended to occupy the entire field of air safety and thereby preempt state regulation of that field" (Goodspeed Airport LLC v East Haddam Inland Wetlands & Watercourses Commn., 634 F3d at 210). As this action involves an aircraft that was flying at the time of the accident, the first prong of the analysis of whether the plaintiff's claims are field preempted has been satisfied (see Dinucci v Clifford, 2023 WL 3847140, *4, 2023 US Dist LEXIS 98533, *9 [ED NY, No. 21-2292 (GRB) (LGD)]).
As to the second prong of the analysis of field preemption, we must address the scope of the preemption (see Goodspeed Airport LLC v East Haddam Inland Wetlands & Watercourses Commn., 634 F3d at 211). It has been determined that the scope of the FAA's preemption extends to the applicable standards of care in air safety cases with respect only to such actions that concern the "design or operation" of an aircraft (Dinucci v Clifford, 2023 WL 3847140, *4, 2023 US Dist LEXIS 98533, *9 [internal quotation marks omitted]). Here, the complaint alleged that the defendants were negligent in, inter alia, the ownership, operation, maintenance, renovations, and alterations to the power lines and equipment at issue. At first glance, this would appear to remove the plaintiff's claims from the area of federal air safety and bring them into the area of state Labor Law (see Scaletta v Michels Power, Inc., 236 AD3d at 6-7). However, as admitted by the plaintiff in the complaint, his claims are linked not only to the maintenance and repair of the power lines, but must be viewed "in connection with the aerial work that Plaintiff was performing at the time of his accident." Because the plaintiff was a co-pilot of the helicopter that came into contact with the power lines, his claims cannot be divorced from the operation of the aircraft. Furthermore, because [*4]the plaintiff admitted that the "safety device" he alleged was inadequate was the helicopter itself, the plaintiff's causes of action must necessarily address the design or operation of the aircraft at issue. Accordingly, the plaintiff's causes of action alleging common-law negligence and violations of Labor Law §§ 200, 240(1), and 241(6) are field preempted.
B. Implied Conflict Preemption
Under the federal rules, "[t]he pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft" (14 CFR 91.3[a]; see Badilla v Midwest Air Traffic Control Serv., Inc., 8 F4th 105, 131 [2d Cir]). Various federal courts have held that the pilot thereby has the "sole responsibility to determine whether it is safe or unsafe to undertake the proposed flight" (Zinn v United States, 835 F Supp 2d 1280, 1323 [SD Fla]; see Jackson v United States, 983 F Supp 273, 281 [D Mass], affd 156 F3d 230 [1st Cir]; Davis v United States, 643 F Supp 67, 77 [ND Ill], affd 824 F2d 549, 552 [7th Cir]).
The Labor Law provisions at issue would place responsibility for these operations elsewhere. "Labor Law § 200 codified the common-law duty imposed on owners, contractors, and their agents to provide workers with a safe place to work" (Samperi v City Safety Compliance Corp., 225 AD3d 723, 724). Labor Law §§ 240(1) and 241(6) impose nondelegable duties on the owners of construction sites (see Archer-Vail v LHV Precast Inc., 168 AD3d 1257, 1259; Baugh v New York City Sch. Constr. Auth., 140 AD3d 1104, 1105). Since the federal rules place sole responsibility on the pilot for all flight operations (see 14 CFR 91.3[a]; Zinn v United States, 835 F Supp 2d at 1323), the plaintiff's causes of action alleging common law negligence and violations of Labor Law §§ 200, 240(1), and 241(6) all conflict with the federal rules.
Additionally, under the federal rules, "[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another" (14 CFR 91.13[a]). This rule is "[c]entral" to the FAA's overarching standard of care (Shupert v Continental Airlines, Inc., 2004 WL 784859, *6, 2004 US Dist LEXIS 6214, *19). Common-law negligence cases require a more stringent standard of care, "that of a reasonable person under the same or similar circumstances" (Abrams v Bute, 138 AD3d 179, 183 [internal quotation marks omitted]). Labor Law § 200 codifies the common-law negligence standard (see Samperi v City Safety Compliance Corp., 225 AD3d at 724), while Labor Law §§ 240(1) and 241(6) "subject contractors and owners to absolute strict liability" (Jock v Fien, 80 NY2d 965, 968). The standards of care underlying the four sources of liability alleged by the plaintiff—i.e., liability for common-law negligence and under Labor Law §§ 200, 240(1), and 241(6)—thereby conflict with, and are preempted by, the federal recklessness standard.
C. CPLR 3211(a)(7) Motion to Dismiss the Complaint
Where applicable, the effect of preemption of a state standard of care is not to preclude recovery or "to deprive Plaintiffs of their state remedies, but rather, to substitute a federal standard of care for New York's reasonably-prudent-person standard" (In re Air Crash Near Clarence Ctr., N.Y., 2013 WL 5964480, *4, 2013 US Dist LEXIS 160224, *14 [WD NY, No. 09-md-2085]; see Dinucci v Clifford, 2023 WL 3847140, *4, 2023 US Dist LEXIS 98533, *10; Crout v Haverfield Intl., Inc., 269 F Supp 3d at 97). Strict liability claims, however, are preempted in their entirety and must be dismissed (see Dinucci v Clifford, 2023 WL 3847140, *4, 2023 US Dist LEXIS 98533, *10; McAllister v Catalyst Aviation, LLC, 2020 WL 13200026, *4, 2020 US Dist LEXIS 263077, *10).
As Labor Law §§ 240(1) and 241(6) "subject contractors and owners to absolute strict liability" (Jock v Fien, 80 NY2d at 968), these laws conflict with 14 CFR 91.3(a) and are preempted. Accordingly, the Supreme Court properly granted those branches of the defendants' motion which were pursuant to CPLR 3211(a)(7) to dismiss the causes of action alleging violations of Labor Law §§ 240(1) and 241(6).
However, those branches of the defendants' motion which were pursuant to CPLR 3211(a)(7) to dismiss the causes of action alleging common-law negligence and a violation of Labor Law § 200 should have been denied, since these causes of action can remain viable by substituting the federal standard of care (see 14 CFR 91.13[a]).
D. Split with the Third Department in Scaletta
Our determination in this matter runs counter to the finding of the Third Department in Scaletta. In doing so, we stress that nothing in this ruling should be construed as support for an owner or general contractor choosing an inherently dangerous methodology—i.e., flying a helicopter near power lines—where a less dangerous option would suffice. However, in this particular [*5]situation, we cannot follow the reasoning set forth in Scaletta.
Initially, this case is distinguishable from Scaletta because the plaintiff herein was one of the pilots of the aircraft, while the plaintiff in Scaletta was a lineman who was working on an aerial platform when the helicopter crashed. The Third Department specifically noted that the plaintiff in Scaletta did not allege that he "traveled to the worksite in the helicopter or that he was even a passenger inside of it when it crashed" (Scaletta v Michels Power, Inc., 236 AD3d at 6). The plaintiff's claims in Scaletta were premised upon the failure to "provide him with adequate safety equipment while he was working outside of the helicopter" (id. at 7). Conversely, here, the plaintiff was inside of the helicopter and, indeed, co-piloting it when it came into contact with the power lines, and the safety equipment that the plaintiff deemed inadequate for the work performed was the helicopter itself.
Furthermore, in Scaletta, the Third Department concluded that the plaintiff lineman's claims would not interfere with air safety because the defendant did not own or operate the helicopter and was not present for the crash (see id. at 6). However, the relevant question is whether allowing the state claims to proceed would interfere with federal air safety regulation, not whether allowing the state claims to proceed would interfere with air safety itself (see Jones v Goodrich Pump & Engine Control Sys., Inc., 86 F4th at 1017). If a general contractor is liable for working conditions aboard an aircraft that its subcontractor is operating, the general contractor is heavily incentivized, and perhaps required, to attend to those working conditions, assess their adequacy, and direct changes when necessary. However, substantially increasing a general contractor's role in air safety alters and interferes with the existing scheme of air safety regulation pursuant to 14 CFR 91.3(a). Placing liability on general contractors who are not present on the aircraft increases the odds of misinformed or conflicting directives during a flight, which is presumably the very risk Congress had in mind when placing full responsibility on the pilot (see id.).
Additionally, the implication of the plaintiff's position is that the party contracting for the use of any aircraft to perform repair work would be subject to duties arising from New York law. This implication raises the specter of a "crazyquilt effect" or "a patchwork of state laws . . . , some in conflict with each other" (French v Pan Am Exp., Inc., 869 F2d 1, 6 [1st Cir]; see Bradshaw v American Airlines, Inc., 123 F4th 1168, 1179 [10th Cir]). Aircraft commonly cross state lines; if each state applied its own Labor Law provision to repair work performed with the use of any aircraft, then any entity owning, operating, or contracting for the use of the aircraft to perform such repair work would need to track and comply with changing requirements whenever it crossed a state border. Although the aircraft in this action did not cross state lines, a finding that the New York Labor Law was not preempted for this reason would subject aircraft that sometimes fly intrastate and sometimes fly interstate to inconsistent legal regimes.
Lastly, in Scaletta, the Third Department determined that the Labor Law causes of action at issue therein had no obvious connection to the manner in which the helicopter was operated (see Scaletta v Michels Power, Inc., 236 AD3d at 7). However, as discussed previously, the scope of field preemption includes aircraft design as well as aircraft operation (see Dinucci v Clifford, 2023 WL 3847140, *4, 2023 US Dist LEXIS 98533, *9; Spinrad v Comair, Inc., 825 F Supp 2d 397, 412 [ED NY]). Labor Law causes of action alleging defective safety equipment, especially, as here, where the safety equipment in question is the helicopter itself, must a priori invoke claims of flaws in the aircraft's design (see Scaletta v Michels Power, Inc., 236 AD3d at 8 [Lynch, J., dissenting]).
VII. Remaining Contention
The contention that the plaintiff's causes of action are expressly preempted by federal law is improperly raised for the first time on appeal and, thus, is not properly before this Court (see Castillo-Florez v Charlecius, 220 AD3d 1, 14).
VIII. Conclusion
Accordingly, the order is modified, on the law, by deleting the provision thereof granting those branches of the defendants' motion which were pursuant to CPLR 3211(a)(7) to dismiss the causes of action alleging common-law negligence and a violation of Labor Law § 200, and substituting therefor a provision denying those branches of the motion; as so modified, the order is affirmed.
BRATHWAITE NELSON, J.P., VOUTSINAS and LOVE, JJ., concur.
ORDERED that the order is modified, on the law, by deleting the provision thereof granting those branches of the defendants' motion which were pursuant to CPLR 3211(a)(7) to [*6]dismiss the causes of action alleging common-law negligence and a violation of Labor Law § 200, and substituting therefor a provision denying those branches of the motion; as so modified, the order is affirmed, with costs to the plaintiff.
ENTER:
Darrell M. Joseph
Clerk of the Court